STATE OF NORTH CAROLINA v. ANDRE LAQUAN FLETCHER

No. 117A96-2

(Filed 18 December 2001)

**1. Jury— selection—consideration of life sentence—stake-out questions**

The trial court did not err in a capital first-degree murder resentencing proceeding by allegedly preventing defendant from fully exploring whether a prospective juror could consider a life sentence given the circumstances of this case, including a first-degree burglary conviction, because: (1) stake-out questions

based on a specific aggravating circumstance are improper, and jurors should not be asked what kind of verdict they would render under certain named circumstances; and (2) defendant could have properly asked whether the prospective juror could consider all aggravating and mitigating circumstances presented to the jury.

## 2. Jury— selection—religious views

The trial court did not err in a capital first-degree murder resentencing proceeding by allegedly preventing defendant from exploring a prospective juror's religious views, because: (1) defendant was prevented from asking the prospective juror whether he believed in "an eye for an eye," rather than whether his religious views would impair his ability to follow the law; and (2) the fact that one prospective juror volunteers such personal information in response to a permissible question does not make it proper for counsel to specifically ask another prospective juror to reveal that same information.

## 3. Jury— selection—death penalty—bias—voir dire—leading questions

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by allowing the prosecutor to question prospective jurors in a manner allegedly designed to avoid disclosure of their bias regarding the death penalty, denying defendant's pretrial motions for individual and sequestered jury selection, and failing to prevent the prosecutor from asking leading questions during voir dire, because: (1) defendant does not claim that the prosecutor misstated the law in any way during the prosecutor's opening comments to the jury venire, and defendant did not object to the statement; (2) it is not error to allow leading questions during a jury voir dire; (3) defendant has failed to show any specific harm resulting from a collective voir dire; and (4) nothing prevented the prosecutor from stopping his inquiry once a prospective juror indicated a propensity to impose death.

## 4. Sentencing— capital—defendant's argument—someone else committed murder—residual doubt as a mitigating circumstance

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by preventing defendant from presenting evidence and arguing during closing arguments

that someone else had committed the murder based on the fact that the evidence was improper as residual doubt, because: (1) although a jury may not be prevented from considering any aspect of defendant's character or record and any of the circumstances of the crime as mitigating evidence, this rule in no way mandates reconsideration by capital juries in the sentencing phase of their residual doubts over a defendant's guilt; (2) defendant was convicted of premeditated and deliberate first-degree murder, and no evidence tended to show that defendant acted in concert with another person; (3) defendant may not argue residual doubt as to a basis underlying the first-degree murder conviction, such as premeditation and deliberation; (4) defendant was not deprived of his right to counsel and the right to present a defense since counsel was only prevented from making improper arguments to the jury; and (5) defendant's contention that residual doubt cannot exist in a case before a resentencing jury is meritless.

5. **Sentencing— capital—defendant's argument—someone else committed murder—residual doubt as a mitigating circumstance—State's failure to object to evidence**

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by preventing defendant from arguing during closing arguments that someone else had committed the murder even though defendant contends the State did not object when the evidence was presented through defendant's testimony, because: (1) the North Carolina Supreme Court already held that residual doubt is not relevant to mitigation, and to allow such argument would have served only to confuse the jury and eviscerate the rule prohibiting presentation of residual doubt as a mitigating circumstance; and (2) any error was harmless beyond a reasonable doubt since defendant was not actually prevented from testifying that someone else had committed the murder.

6. **Sentencing— capital—mitigating circumstances—acting under duress or under domination of another person**

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by failing to submit to the jury the requested statutory mitigating circumstance under N.C.G.S. § 15A-2000(f)(5) that defendant was acting under duress or under the domination of another person, because: (1) no evidence was presented to warrant submission of the (f)(5) mitigat-

ing circumstance; (2) at most, defendant's testimony shows his girlfriend suggested commission of the crime and that defendant readily agreed and participated; and (3) the State's evidence showed that defendant was alone with the victim at the time of the crime.

**7. Sentencing— capital—mitigating circumstances—accomplice in or accessory to the capital felony committed by another person—relatively minor participation**

The trial court did not err in a capital first-degree murder resentencing proceeding by failing to submit to the jury the statutory mitigating circumstance under N.C.G.S. § 15A-2000(f)(4) that defendant was an accomplice in or accessory to the capital felony committed by another person and that his participation was relatively minor, because no substantial evidence supported a finding that defendant's participation was minor.

**8. Sentencing— capital—nonstatutory mitigating circumstances—remorse—dominated or influenced by another**

The trial court did not err in a capital first-degree murder resentencing proceeding by failing to submit to the jury the requested nonstatutory mitigating circumstances that defendant told the circumstances surrounding the murder to explain his sense of remorse and that defendant was dominated or influenced by his girlfriend who is approximately fifteen years older, because: (1) any error was harmless beyond a reasonable doubt since the jury heard defendant's testimony supporting the circumstance explaining defendant's sense of remorse, the jury was able to consider this alleged mitigating evidence and was encouraged to do so by counsel's closing argument, and the trial court submitted the catchall mitigating circumstance under N.C.G.S. § 15A-2000(f)(9); and (2) all the evidence considered in the light most favorable to defendant showed that defendant exhibited strong will with respect to his girlfriend.

**9. Sentencing— capital—acting in concert—*Enmund/Tison* instruction—defendant's state of mind**

The trial court did not err in a capital first-degree murder resentencing proceeding by failing to require the jury to make a factual determination of defendant's state of mind concerning the murder pursuant to an *Enmund/Tison* instruction, because: (1) defendant's interpretation would permit a resentencing jury to completely retry the issue of guilt even though the case was

remanded pursuant to a holding that error occurred only in the sentencing proceeding; and (2) where the guilt-phase jury found defendant guilty of first-degree murder based on premeditation and deliberation without an instruction on acting in concert, an *Enmund/Tison* instruction is not required at sentencing.

**10. Constitutional Law— effective assistance of counsel— defense counsel's statement that murder was especially heinous, atrocious, or cruel—tactical decision**

A defendant was not denied his Sixth Amendment right to effective assistance of counsel in a first-degree murder resentencing proceeding even though defense counsel made the statement during closing arguments that the murder was especially heinous, atrocious, or cruel, because: (1) the decision to make this concession was agreed to by defendant and did not fall below the required objective standard of reasonableness; and (2) the evidence in the case leaves little doubt that this murder was especially heinous, atrocious, or cruel, and counsel could reasonably have decided upon a strategy of conceding this aggravating circumstance to gain credibility with the jury.

**11. Criminal Law— prosecutor's argument—general deterrence—voice and conscience of community**

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by overruling defendant's objection to the prosecutor's closing argument allegedly urging the jury to consider the general deterrence value of capital punishment, because the portion of the prosecutor's argument where defendant objected urges the jury to act as the voice and conscience of the community and does not improperly argue general deterrence.

**12. Criminal Law— prosecutor's argument—jury should send a message with its verdict—voice and conscience of community**

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by failing to intervene ex mero motu during the prosecutor's argument that the jury should send a message with its verdict to defendant and any who would follow in his footsteps because: (1) although the statement is arguably a reference to general deterrence, the offending comment was brief and its overall significance to the entire closing argument was minimal; and (2) the comment

was made in the context of a proper voice and conscience of the community argument.

**13. Criminal Law— prosecutor's argument—victim was tortured and begged for her life**

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by failing to intervene ex mero motu during the prosecutor's argument stating that the victim was tortured and begged for her life, because the prosecutor did not ask the jurors to imagine themselves or a loved one as a victim, but merely asked them to imagine the fear and pain that the victim must have felt.

**14. Criminal Law— prosecutor's argument—home broken into by defendant could have been the home of the jurors**

The trial court did not abuse its discretion in a capital first-degree murder resentencing proceeding by failing to intervene ex mero motu during the prosecutor's argument stating that the home broken into by defendant could have been the home of the jurors, because the prosecutor did not ask the jurors to put themselves in the victim's place, but reiterated the random arbitrariness of the crime.

**15. Criminal Law— prosecutor's argument—victim was tortured and begged for her life**

The trial court did not err by failing to intervene ex mero motu in a capital first-degree murder resentencing proceeding by allegedly allowing the prosecutor to inflame the passion of the jury by stating the victim was forced and literally tortured into giving up the location of her valuables, and probably begged for her life and asked for mercy, because the statements were reasonable inferences from the evidence.

**16. Sentencing— capital—death penalty proportionate**

The trial court did not err by imposing the death penalty in a first-degree murder case, because: (1) defendant was convicted of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule; (2) defendant was also convicted of first-degree burglary and robbery with a dangerous weapon; (3) the jury found the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed while defendant was engaged in the commission of a burglary; (4) the jury found the N.C.G.S. § 15A-2000(e)(9) aggravating circum-

stance that the murder was especially heinous, atrocious, or cruel; and (5) defendant broke into an elderly victim's home at night, stabbed and beat her in various rooms in the house, and left her to die.

Justice EDMUNDS concurring.

Justices ORR and BUTTERFIELD join in concurring opinion.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a 9 December 1999 judgment imposing a sentence of death entered by Lamm, J., at a resentencing proceeding held in Superior Court, Rutherford County, upon defendant's conviction of first-degree murder. Heard in the Supreme Court 10 September 2001.

*Roy A. Cooper, Attorney General, by G. Patrick Murphy, Special Deputy Attorney General, for the State.*

*Kathryn L. VandenBerg for defendant-appellant.*

PARKER, Justice.

Defendant Andre Laquan Fletcher was indicted on 7 September 1994 for first-degree murder, first-degree burglary, and robbery with a dangerous weapon. He was tried capitally and, on 15 February 1996, was found guilty of first-degree murder on the basis of malice, premeditation, and deliberation and under the felony murder rule. He was also found guilty of first-degree burglary and robbery with a dangerous weapon. Following a capital sentencing proceeding, the jury recommended a sentence of death for the murder; and the trial court entered judgment accordingly. For the first-degree burglary and robbery with a dangerous weapon convictions, the trial court entered consecutive sentences of fifty years' and forty years' imprisonment, respectively.

On appeal this Court affirmed the convictions but granted defendant a new capital sentencing proceeding based upon the trial court's failure to submit two mitigating circumstances to the jury in the sentencing proceeding. *State v. Fletcher*, 348 N.C. 292, 329, 500 S.E.2d 668, 690 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 113 (1999) (*Fletcher* I). Following a second capital sentencing proceeding, upon the jury's recommendation the trial court entered judgment sentencing defendant to death for the first-degree murder conviction.

The State's evidence at the resentencing hearing was substantially the same as the State's evidence in *Fletcher* I. On 17 August 1994 during a rainstorm, eighty-three year old Georgia Ann Dayberry Hamrick ("victim") was beaten and knifed to death in her home in Spindale, Rutherford County, North Carolina. The State's evidence tended to show that defendant broke into the victim's home, beat her to coerce her into disclosing the location of valuables, and then cut her throat. Defendant stole a number of rings, two of which he and his girlfriend, Lisa Hill, sold. The police recovered additional rings belonging to the victim at the places defendant said he had put them.

At his first trial and sentencing hearing, defendant did not testify but presented evidence tending to show that a man wearing a yellow raincoat who was seen in the neighborhood by several witnesses that evening committed the crime but was never found or identified by the police. Defendant's defense was that the evidence linking him to the burglary and murder was insufficient.

At the resentencing hearing defendant testified that he met Lisa Hill in 1994, when defendant was twenty years old and Hill was thirty-four years old. Defendant moved into Hill's home, located near the victim's home, a couple of months before the killing. On the night of the murder, defendant and Hill were at home smoking marijuana mixed with cocaine. They began arguing when defendant refused to give more drugs to Hill, explaining that "you can't do drugs and sell drugs, too, and make a profit." Defendant told Hill he was going to the store for cigarettes, and Hill followed.

Hill continued asking for drugs, whereupon defendant told her, "You got to go out and get your own money however you want to do it if you want to support your habit." Hill then suggested that they break into a house. Hill and defendant approached the victim's house; and when no one responded to the doorbell, defendant tried to pull the storm door open. Defendant broke the glass in the storm door, then kicked in the wooden door. Once defendant and Hill entered the house, defendant noticed some movement and realized that the victim was in the house. Hill then went around defendant and began hitting the victim with a brass duck. Defendant took the brass duck away from Hill, ran out the back door, and threw it into a field behind the house. When defendant returned to the house, he discovered Hill "poking at" the victim with a knife. Defendant took the knife away from Hill, broke it in half by stepping on it, then ran away. Defendant

began drinking when he returned home; Hill returned home some time later.

The next morning defendant and Hill went to a jewelry store to have a ring in Hill's possession appraised. Hill refused to tell defendant how she obtained the ring. At Hill's suggestion on the way home, they drove by the victim's house, where they were stopped and questioned by police officers. Hill subsequently allowed the officers to seize the car in order to perform a luminol examination. Once the officers left with Hill's car, defendant again asked Hill about the ring. Hill removed the ring from her bra and asked defendant where she could sell the ring. Defendant suggested a jeweler in Forest City, and they walked to a nearby store to call a cab. When Hill exited the store, she told defendant that she had wrapped some of the jewelry in a paper towel and hidden it in the store's rest room. Once they arrived in Forest City, defendant began to understand where the rings had come from and told Hill not to sell them. Hill stated that the rings were hers and that she could do with them as she pleased. Defendant became angry and walked home.

Police officers were searching the home when defendant returned, and defendant noticed Hill smoking crack while officers were present in the room. Defendant admitted that he owned the wet clothing officers discovered and that he had worn those clothes the night of the murder. After the police officers left the house, defendant borrowed his sister's car to drive Hill to a pawn shop. When they arrived Hill entered the pawn shop alone, then returned to the car. After defendant drove Hill to a location where she purchased drugs, they returned the car to defendant's sister and walked home. As defendant and Hill were walking home, defendant suggested that Hill dispose of the remaining jewelry. Hill agreed and hid the remaining rings behind a building.

Later that evening defendant went to the store alone. When he returned home, he was arrested on an unrelated charge of breaking and entering a motor vehicle. Defendant was questioned about the murder when he was in jail for this other charge. Defendant did not want to "point the finger" at himself or Hill, but he eventually told officers where the rings were located in a manner intended to avoid incriminating anyone. Defendant did not tell anyone about his involvement in the murder until a year later, shortly before the trial, when he attempted to tell his mother.

Defendant further testified that he accepts responsibility for the murder because he kicked in the door and could have done more to stop the murder from occurring. Defendant stated that he did not intend to kill anyone and did not know that anyone was home when he broke into the victim's house.

Defendant also presented testimony from a juvenile court counselor, two camp counselors, an investigator with the Department of Social Services, and defendant's sister and aunt that showed that defendant had a history of theft but was not a violent or aggressive person. Defendant's sister also testified that defendant's father denied paternity of defendant, and would leave defendant behind when he picked up the other children for a visit.

Dr. Anthony Sciara, an expert in clinical psychology, testified that defendant has an IQ of 88, suffers from depression and a coping deficit, and responds hastily without adequate information. Dr. Sciara did not find indications that defendant would tend to be aggressive and noted that defendant has a passive personality that leads him to follow what other people tell him. The doctor further testified that defendant's substance abuse began around the age of seven or eight.

Additional facts will be presented as necessary to discuss specific issues.

## JURY SELECTION

[1] In his first issue relating to jury selection for the resentencing, defendant argues that the trial court committed prejudicial constitutional error in preventing defendant from fully exploring whether a prospective juror could consider a life sentence given the circumstances of this case and the prospective juror's religious views. This juror was ultimately seated on the jury.

When asked by the prosecutor during *voir dire* whether he had an opinion on the death penalty, prospective juror Mark Franklin responded, "I have an opinion about it. . . . I believe in it." Prospective juror Franklin then indicated that he could follow the law and could return a sentence of either death or life imprisonment. Once prospective juror Franklin was passed to the defense, defense counsel entered into the following colloquy with him:

> [DEFENSE COUNSEL]: Could [a life sentence] also be an appropriate punishment for first degree murder? Premeditated, intentional murder?

Mr. Franklin: Depending on the circumstances.

[Defense Counsel]: Okay. Are you thinking of any circumstances when you say that?

[Prosecutor]: Objection.

The Court: Sustained.

[Defense Counsel]: I'm sorry. Do you mean you would want to hear the evidence first?

Mr. Franklin: Yes.

[Defense Counsel]: This is a case of first degree murder, and what that is, is premeditated, intentional[,] deliberate killing. He's already been convicted of that. He's also been convicted of first degree burglary as part of it, and that's an aggravating factor under the law of North Carolina. The State has to—the State does not have to prove murder because that's already been done here. They do have to prove at least one aggravating factor, and that is an aggravating factor, the fact that the murder was part of a burglary. That's true in this case because [defendant] was also convicted of burglary. Knowing that, knowing that about this case, could you still consider a life sentence after you heard all of the evidence?

[Prosecutor]: Objection.

The Court: The objection is sustained. It's incomplete, overly broad, hypothetical question.

Defendant argues that the above question was essentially the same as the following question, which this Court has expressly approved: "Is your support for the death penalty such that you would find it difficult to consider voting for life imprisonment for a person convicted of first degree murder?" *State v. Conner*, 335 N.C. 618, 643, 440 S.E.2d 826, 840 (1994). Defendant notes that the only difference between the approved question and the question at issue is that the one at issue added that the first-degree murder was accompanied by a first-degree burglary conviction. Since evidence of at least one aggravating circumstance is required before the State can prosecute for first-degree murder, defendant contends that it must also be permissible to ask a prospective juror whether he can consider a life sentence where an aggravating circumstance exists. We disagree.

STATE v. FLETCHER

[354 N.C. 455 (2001)]

This Court has long held that so-called "stake out" questions are improper. " 'Counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. . . . Jurors should not be asked what kind of verdict they would render under certain named circumstances.' " *State v. Braxton*, 352 N.C. 158, 179, 531 S.E.2d 428, 440 (2000) (quoting *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980)) (alteration in original), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). Defendant sought to stake out the juror by asking whether a certain set of circumstances would still allow him to vote for life imprisonment. However, the trial court had not yet instructed the juror on the standard of proof for aggravating and mitigating circumstances or on the process of weighing those circumstances. Thus, defendant sought to ask the juror's answer to a legal question before the juror had been properly instructed by the trial court as to the law. "[S]uch questions are confusing to the average juror who at that stage of the trial has heard no evidence and has not been instructed on the applicable law. . . . [S]uch questions tend to 'stake out' the juror and cause him to pledge himself to a future course of action." *State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *death sentence vacated*, 428 U.S. 902, 49 L. Ed. 2d 1206 (1976).

The trial court's decision is further supported by *State v. Richmond*, 347 N.C. 412, 495 S.E.2d 677, *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998), and *State v. Robinson*, 339 N.C. 263, 451 S.E.2d 196 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). In both *Richmond* and *Robinson*, this Court held that it was improper to stake out prospective jurors by asking whether they could still consider mitigating circumstances knowing that the defendant had a prior first-degree murder conviction. *Richmond*, 347 N.C. at 424, 495 S.E.2d at 683; *Robinson*, 339 N.C. at 272, 451 S.E.2d at 202. The improper question in *Richmond* and *Robinson* went to an aggravating circumstance: whether the defendant had been previously convicted of another capital felony, N.C.G.S. § 15A-2000(e)(2) (1999). Thus, we see no difference between the question in those cases and the one at bar, as all three involved "stake out" questions based on an aggravating circumstance. Furthermore, as we noted in *Richmond*, defendant here could have properly asked whether the prospective juror could consider all aggravating and mitigating circumstances presented to the jury. *Richmond*, 347 N.C. at 426, 495 S.E.2d at 684. The use of a specific aggravating circumstance in this case, however, created an improper "stake out" question.

**[2]** Defendant next sought to ask prospective juror Franklin about his religious beliefs in light of his association with Gideon's International, an organization dedicated to distributing Bibles. Defendant attempted to ask prospective juror Franklin whether he is "a person who believes in the Biblical concept of an eye for an eye." The trial court sustained the prosecutor's objection to this question.

Defendant contends that the trial court should have allowed him to inquire into the prospective juror's possible bias toward the death penalty based on his religious views and that this ruling prevented defendant from asking the prospective juror whether his religious views would prevent or impair his ability to follow the law. However, even a cursory review of the transcript reveals that defendant did not ask that particular question. What defendant was prevented from asking was whether the prospective juror believed in "an eye for an eye," not whether the prospective juror's religious views would impair his ability to follow the law. In *State v. Mitchell*, 353 N.C. 309, 543 S.E.2d 830 (2001), this Court held that it is improper for a defendant to ask a prospective juror about his or her understanding of the Bible's teachings on the death penalty. *Id.* at 318, 543 S.E.2d at 836. In so holding, the Court relied on *State v. Laws*, 325 N.C. 81, 109, 381 S.E.2d 609, 625-26 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), where the Court held that it is improper to ask whether a prospective juror believes in a literal interpretation of the Bible. *Mitchell*, 353 N.C. at 318, 543 S.E.2d at 836. The Court in *Mitchell* noted that " '[c]ounsel's right to inquire into the beliefs of prospective jurors to determine their biases and attitudes does not extend to all aspects of the jurors' private lives or of their religious beliefs.' " *Id.* (quoting *Laws*, 325 N.C. at 109, 381 S.E.2d at 625).

Defendant in this case was allowed to inquire into the prospective juror's religious affiliation, his activities with Gideon's International, his views on capital punishment, his ability to consider mitigating circumstances, and his willingness to impose a life sentence. Given that defendant was allowed "wide latitude to inquire into [the prospective juror's] beliefs, attitudes, and biases," *id.*, we decline to hold that the trial court erred in refusing to allow defendant to delve into such personal information as specific religious teachings.

Defendant further contends that this question was permissible in light of an earlier prospective juror's statement that, as the Bible

teaches "an eye for an eye," death is the only appropriate punishment for murder. Defendant was allowed to strike this prospective juror for cause but argues that when one juror is excused for a religious belief, defendant should be allowed to ask other jurors whether they subscribe to that same belief.

When asked whether she could consider a life sentence, the previous prospective juror, Melissa Bailey, stated unequivocally that she could not consider a life sentence because of her understanding of the Bible. The fact that one prospective juror volunteers such personal information in response to a permissible question does not make it proper for counsel to specifically ask another prospective juror to reveal that same information. For the above reasons we hold that the trial court properly sustained the prosecutor's objections to defendant's *voir dire* questioning of prospective juror Franklin.

**[3]** Defendant next contends that the trial court committed prejudicial constitutional error in allowing the prosecutor to question prospective jurors in a manner designed to avoid disclosure of their bias regarding the death penalty. Defendant contends that the prosecutor did so by giving an introductory speech that instructed the prospective jurors how to respond to death-qualification questions, by asking leading questions, by failing to probe further once a prospective juror indicated a propensity to impose death, and by asking leading questions to recharacterize juror statements so that the prospective jurors could be death-qualified.

With respect to the prosecutor's opening comments to the jury venire, defendant does not claim that the prosecutor misstated the law in any way. Furthermore, defendant did not object to the statement; and we find nothing to warrant the trial court's intervention *ex mero motu*. As to the prosecutor's use of leading questions and the trial court's denial of defendant's pretrial motion to prohibit leading questions in *voir dire*, this Court has previously held that

> [l]eading questions should not in most cases be used when testimony is being offered to a jury. To do so allows the questioner in effect to testify to the jury. 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 169 (4th ed. 1993). This consideration does not apply at a jury *voir dire*. It is not error to allow leading questions at that time.

*State v. Gray*, 347 N.C. 143, 164, 491 S.E.2d 538, 545 (1997), *cert. denied*, 523 U.S. 1031, 140 L. Ed. 2d 486 (1998). Thus, we hold that the trial court did not err in allowing such questions.

Defendant further contends that the trial court's denial of defendant's motion for individual and sequestered *voir dire* allowed the prosecutor to indoctrinate all of the prospective jurors with his leading questions. Just as "[t]he argument that a collective *voir dire* permits prospective jurors to become 'educated' as to responses which would enable them to be excused from the panel is . . . speculative," *State v. Wilson*, 313 N.C. 516, 524, 330 S.E.2d 450, 457 (1985), the argument that such *voir dire* allows prospective jurors to become educated as to responses that would permit them to serve on the jury is equally speculative. Moreover, defendant has failed to show any specific harm that resulted from the collective *voir dire*. *See State v. Barnes*, 345 N.C. 184, 208, 481 S.E.2d 44, 56-57, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *and cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998).

As for defendant's contention that the prosecutor did not probe further once a prospective juror indicated a propensity to impose death, we note that nothing prevented defendant from doing so. For the above reasons we hold that the trial court did not abuse its discretion in either denying defendant's pretrial motions for individual and sequestered jury selection and to prohibit leading questions or in failing to prevent the prosecutor from asking leading questions during *voir dire*.

## OTHER ISSUES

[4] Defendant first contends that the trial court erred in preventing defendant from arguing in closing arguments that someone else had committed the murder. We disagree and, therefore, find no error in the trial court's handling of this issue.

At resentencing the trial court granted the prosecutor's motion to prevent defendant from testifying that anyone else committed the crime, stating:

[R]esidual doubt testimony is not admissible during the sentencing proceeding of a capital case. That being the case, I'm going to grant or sustain the State's objection to the extent of any testimony from the defendant that someone else committed the crime of murder. . . . And that he did not commit the crime of murder

both on the basis of felony murder and on the basis of premeditation and deliberation.

Despite this ruling defendant testified, without objection from the prosecution, that his girlfriend, Lisa Hill, had committed the murder and that defendant had tried repeatedly to stop her.

During the charge conference the trial court ruled that defense counsel could not argue any evidence during closing that someone else had committed the murder but that it would permit argument that someone else had been present. Pursuant to this ruling the trial court sustained the prosecutor's objections to defendant's closing argument on two occasions. First, defendant stated with respect to the aggravating circumstance that the murder was especially heinous, atrocious, or cruel: "Is it heinous, atrocious and cruel? You bet. No doubt about that. I guess the real question is, what's [defendant's] involvement in that." Second, in referring to the lack of the victim's blood or hair on defendant, counsel stated that defendant testified that he had taken the knife away from somebody and broken it. The prosecutor objected to both arguments, and the trial court instructed the jury each time that it should not consider arguments that "someone other than the defendant is legally responsible for this murder." Defendant contends that these rulings prevented defendant from arguing mitigating evidence demonstrating that he had a lesser role in the offense.

Defendant relies on two United States Supreme Court cases to support his contention that he should have been allowed to argue this evidence in that it shows the circumstances of the crime in a mitigating fashion. *See Hitchcock v. Dugger*, 481 U.S. 393, 95 L. Ed. 2d 347 (1987); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1 (1982). In *Eddings* the Court held that

"the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."

455 U.S. at 112, 71 L. Ed. 2d at 8 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978)) (first alteration in original). The trial court in *Eddings* refused to consider evidence that the defendant had a personality disorder and poor family history because such evidence did not tend to provide a legal excuse for the defendant's

actions. *Id.* at 113, 71 L. Ed. 2d at 10. The Supreme Court concluded that such mitigating evidence should have been considered. *Id.* at 114, 71 L. Ed. 2d at 11.

In *Hitchcock*, which was appealed from Florida, Florida law at the time of the defendant's sentencing prevented consideration of nonstatutory mitigating circumstances. 481 U.S. at 396, 95 L. Ed. 2d at 352. The Court began by noting that

> in capital cases, " 'the sentencer' " may not refuse to consider or " 'be precluded from considering' " any relevant mitigating evidence. *Skipper v. South Carolina*, 476 U.S. 1, 4[, 90 L. Ed. 2d 1, 6] (1986) (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 114[, 71 L. Ed. 2d 1, 11] (1982)).

*Hitchcock*, 481 U.S. at 394, 95 L. Ed. 2d at 350. As the Florida law violated *Skipper*, the Court held that the law was invalid. *Id.* at 399, 95 L. Ed. 2d at 353.

Though defendant is correct in noting that a jury may not be prevented from considering any aspect of the defendant's character or record and any of the circumstances of the crime as mitigating evidence, the United States Supreme Court has held that this rule

> in no way mandates reconsideration by capital juries, in the sentencing phase, of their "residual doubts" over a defendant's guilt. Such lingering doubts are not over any aspect of [defendant's] "character," "record," or a "circumstance of the offense." This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor.

*Franklin v. Lynaugh*, 487 U.S. 164, 174, 101 L. Ed. 2d 155, 166 (1988). In a concurring opinion, Justice O'Connor stated as follows:

> "Residual doubt" is not a fact about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere between "beyond a reasonable doubt" and "absolute certainty." [Defendant's] "residual doubt" claim is that the States must permit capital sentencing bodies to demand proof of guilt to "an absolute certainty" before imposing the death sentence. Nothing in our cases mandates the imposition of this heightened burden of proof at capital sentencing.

*Id.* at 188, 101 L. Ed. 2d at 175 (O'Connor, J., concurring).

Pursuant to the ruling in *Franklin*, this Court has held that residual doubt is not properly considered as mitigating evidence in this state. *See, e.g., State v. Roseboro*, 351 N.C. 536, 549, 528 S.E.2d 1, 10 (holding that "the defendant's character or record and the circumstances of the offense do not encompass" residual doubt), *cert. denied*, 531 U.S. 1019, 148 L. Ed. 2d 498 (2000); *State v. Walls*, 342 N.C. 1, 52, 463 S.E.2d 738, 765 (1995) (holding that "residual doubt has no place in the sentencing phase"), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996); *State v. Hill*, 331 N.C. 387, 415, 417 S.E.2d 765, 779 (1992) (holding that "[l]ingering or residual doubt as to the defendant's guilt does not involve the defendant's character or record, or the circumstances of the offense," and that residual doubt is thus not a relevant circumstance to be submitted in a capital sentencing proceeding"), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993). Thus, while *Eddings* and *Hitchcock* do stand for the proposition that a sentencer must be allowed to consider all mitigating evidence, this Court, relying on United States Supreme Court precedent, has held that evidence suggesting residual doubt is not mitigating evidence. For this reason we do not find *Eddings* or *Hitchcock* to be controlling on the facts in this case.

In further support of this assignment of error, defendant argues that two cases in particular are factually similar to the instant case and should control its disposition. Defendant relies first on *Green v. Georgia*, 442 U.S. 95, 60 L. Ed. 2d 738 (1979) (per curiam). In *Green* the Supreme Court held that the exclusion during sentencing of a hearsay statement that defendant did not participate in the offense was a violation of due process. *Id.* at 97, 60 L. Ed. 2d at 741. The evidence during the guilt phase in *Green* showed that the defendant acted in concert with another man. *Id.* at 96, 60 L. Ed. 2d at 740.

The second case upon which defendant relies is *State v. Barts*, 321 N.C. 170, 362 S.E.2d 235 (1987). In *Barts* the defendant pled guilty to first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. *Id.* at 175, 362 S.E.2d at 238. The evidence supporting the defendant's plea showed that the defendant acted in concert with two other men. *Id.* at 173, 362 S.E.2d at 236-37. In explaining the charges to the defendant, the trial court advised that if the State proved that the defendant acted in concert with someone else, he would be equally responsible under the law even if he did not actually commit any of the acts constituting murder. *Id.* at 175, 362 S.E.2d at 238. At sentencing the trial court excluded a hearsay statement in which another person confessed that he, not the defendant,

personally administered the fatal beating. *Id.* at 182, 362 S.E.2d at 241. This Court, relying on *Green*, held that the hearsay was erroneously excluded as it was relevant to the issue of punishment.

*Green* and *Barts* are distinguishable from this case in that neither case involves residual doubt. Both *Green* and *Barts* included evidence during the guilt phase that the defendant acted in concert with another person. When instructed on acting in concert, a jury may convict a defendant of premeditated and deliberate first-degree murder even though it does not believe the defendant personally committed the acts constituting the offense. *Barts*, 321 N.C. at 177, 362 S.E.2d at 239. The excluded evidence suggesting that the defendant did not personally kill the victim was consistent with the guilty verdict in *Green* and the evidentiary basis for the guilty plea in *Barts* and would not have prompted the jury in either case to consider residual doubt. Where a defendant acts in concert with another, the defendant may argue to the jury that he did not personally commit the physical acts of murder without appealing to their residual doubt. Accordingly, neither of those cases addresses the issue of residual doubt.

In this case defendant was convicted of premeditated and deliberate first-degree murder and no evidence at the guilt-innocence phase tended to show that defendant acted in concert with another person. Thus defendant's attempt at sentencing to argue that he did not kill the victim himself was in direct contravention to the finding of the guilt-phase jury that convicted defendant on the basis of premeditation and deliberation without evidence of or an instruction on acting in concert. The purpose of defendant's evidence and argument that someone else committed the murder was to raise residual doubt as to his intention to commit murder and, thus, was not proper mitigating evidence.

Defendant also contends that he did not attempt to offer exculpatory evidence in this case but merely offered evidence that showed his level of participation in this offense. Thus, defendant argues that this case does not raise the issue of residual doubt, as in *Walls*, 342 N.C. 1, 463 S.E.2d 738, but is instead a case where defendant attempts to show his level of participation in the crime without exculpating himself, as in *Barts*, 321 N.C. 170, 362 S.E.2d 235. We disagree.

Defendant's trial counsel made essentially the same argument prior to the trial court's ruling that defendant could not testify as to residual doubt:

The defendant's evidence that he would give is that he, himself, kicked in the door, and so doing, he committed first degree burglary. And out of his first degree burglary a murder occurred. And so, on his own statement that he will give, he basically confesses to felony murder. And in so doing, places himself in the same jeopardy that he's in anyway.

Such arguments are not persuasive on the facts before us. In this case, defendant was convicted by a jury of first-degree murder on the bases of both premeditation and deliberation and felony murder. Defendant testified at resentencing that he broke into the victim's home at Hill's urging; that Hill attacked the victim; and that defendant stopped Hill from beating and from stabbing the victim. This testimony concedes that defendant committed burglary, a felony, and that a murder resulted. Thus, this evidence is consistent with felony murder and does not raise residual doubt as to guilt under the felony murder theory. However, defendant's testimony was not consistent with premeditation and deliberation as a basis for the first-degree murder conviction in that it suggested that defendant never intended to kill the victim. Thus, the testimony created doubt as to whether defendant committed premeditated and deliberate murder.

Just as a defendant may not argue residual doubt as to the offense of first-degree murder during sentencing, *See Roseboro*, 351 N.C. at 549, 528 S.E.2d at 10; *Walls*, 342 N.C. at 52, 463 S.E.2d at 765; *Hill*, 331 N.C. at 415, 417 S.E.2d at 779, we hold that defendant may not argue residual doubt as to a basis underlying the first-degree murder conviction, such as premeditation and deliberation. Residual doubt as to a basis for the underlying conviction is not a circumstance of the offense and, thus, is equally inappropriate.

Defendant further contends that by preventing defendant from arguing his case to the jury, the trial court's ruling deprived defendant of his right to counsel and the right to present a defense. A defendant's right to present a closing argument is constitutionally protected. *Herring v. New York*, 422 U.S. 853, 858-60, 45 L. Ed. 2d 593, 598-99 (1975). However, "[t]his is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing arguments." *Id.* at 862, 45 L. Ed. 2d at 600; *see also State v. Miller*, 344 N.C. 658, 673, 477 S.E.2d 915, 924 (1996) ("*Improper* restrictions on the defendant's opportunity to make a closing argument may constitute a denial of the constitutional

right to counsel as well as the right to present a defense.") (emphasis added). In this case, as the above analysis illustrates, counsel was only prevented from making improper arguments to the jury. Thus, we hold that the trial court's restriction on closing arguments in this case was not improper and did not infringe upon defendant's constitutional rights.

Defendant's contention that residual doubt cannot exist in a case before a resentencing jury is equally meritless. The argument relies on semantics and ignores the rationale underlying the rule prohibiting residual doubt. Essentially, defendant argues that a resentencing jury cannot have "residual" doubt as that jury was not present at the guilt phase, that is, this jury did not make the original determination of guilt beyond a reasonable doubt and, therefore, cannot have "lingering" or "residual" doubt. Although in a technical sense defendant may be correct, defendant essentially attempted to create doubt in the minds of these jurors and to argue that the resentencing jury should consider its doubts about the earlier jury's verdict based on premeditation and deliberation. Hence, a residual doubt analysis is appropriate; and we are unpersuaded by this argument.

For the reasons stated above, we hold that the evidence defendant sought to argue to the jury improperly attempted to present residual doubt as a mitigating circumstance. Therefore, we hold that the trial court did not abuse its discretion in ruling that defendant could not present such evidence or argue it to the jury in closing arguments.

**[5]** Defendant next contends that, even if the evidence is improper as residual doubt, defendant should have been permitted to argue it to the jury as the State did not object when it was presented through defendant's testimony. The settled law in this state is that counsel may argue all evidence which has been presented as well as reasonable inferences which arise therefrom. *State v. McNeil*, 350 N.C. 657, 685, 518 S.E.2d 486, 503 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 321 (2000). Furthermore, counsel is allowed wide latitude in its arguments to the jury. *State v. Meyer*, 353 N.C. 92, 113, 540 S.E.2d 1, 13 (2000), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 70 U.S.L.W. 3235 (2001). However, these general rules are balanced by the trial judge's discretion to limit argument of counsel where the subject is improper for jury argument. *State v. Whiteside*, 325 N.C. 389, 398, 383 S.E.2d 911, 916 (1989). As this Court has held that residual doubt is not relevant to mitigation, the trial court did not abuse its discretion

in prohibiting counsel from arguing evidence creating residual doubt even though the evidence was admitted through defendant's testimony. To allow such argument would have served only to confuse the jury and eviscerate the rule prohibiting presentation of residual doubt as a mitigating circumstance.

Defendant further contends that concerns of residual doubt must yield to defendant's right to testify on his own behalf. Although the trial court initially ruled that defendant could not testify that someone else had committed the murder, the transcript discloses that defendant was not actually prevented from so testifying. Accordingly, even if the trial court's ruling were erroneous, such an error would be harmless beyond a reasonable doubt. *State v. Rinck*, 303 N.C. 551, 572, 280 S.E.2d 912, 927 (1981) ("[A]ny error by the trial court in sustaining the State's objections was cured when the evidence sought to be admitted was subsequently admitted without objection.").

[6] Defendant contends next that he is entitled to a new sentencing proceeding, as the trial court erroneously failed to submit to the jury the requested statutory mitigating circumstance that defendant was acting under duress or under the domination of another person, N.C.G.S. § 15A-2000(f)(5). "[T]he test for sufficiency of evidence to support submission of a statutory mitigating circumstance is whether a juror could reasonably find that the circumstance exists based on the evidence." *Fletcher*, 348 N.C. at 323, 500 S.E.2d at 686. The pattern instruction requested by defendant states that a person acts under duress "if he acts under the pressure of any threat or compulsion from any source" and that a person acts under the domination of another person "if he acts at the command or under the control of the other person or in response to the assertion of any authority . . . which defendant did not have sufficient will to resist." N.C.P.I.—Crim. 150.10 (2000).

We hold that in this case no evidence was presented to warrant submission of the (f)(5) mitigating circumstance. Defendant's own testimony shows that he was strong-willed with respect to Hill: he refused to give her drugs, told her to get her own drugs, stopped her from beating the victim with the brass duck, stopped her from stabbing the victim with the knife, and told her to dispose of the remaining rings. At most defendant's testimony shows that Hill suggested commission of the crime and that defendant readily agreed and participated. This is not the equivalent of duress or domination. Likewise, evidence presented by the prosecution does not support this circumstance as it showed that defendant was alone with the vic-

tim at the time of the crime. Thus, no evidence was before the jury from which a juror could reasonably find that defendant was acting under duress or under the domination of another person.

[7] Defendant also argues that the trial court erroneously failed to submit to the jury the statutory mitigating circumstance that defendant was an accomplice in or accessory to the capital felony committed by another person and that his participation was relatively minor, N.C.G.S. § 15A-2000(f)(4). Though defendant did not request submission of this circumstance at resentencing, a trial court has no discretion as to whether to submit a circumstance where substantial evidence supporting the circumstance has been presented. *State v. Skipper*, 337 N.C. 1, 44, 446 S.E.2d 252, 276 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995).

Defendant acknowledges that this Court has found this circumstance inapplicable where the defendant is convicted of premeditated and deliberate murder. *See Roseboro*, 351 N.C. at 549, 528 S.E.2d at 10. Defendant argues, though, that the Court should not apply *Roseboro* where, as here, evidence offered at sentencing or resentencing presents facts unknown to the guilt-phase jury. However, under defendant's evidence at resentencing, the trial court properly determined that no substantial evidence supported a finding that defendant's participation was minor. Thus, we hold that the trial court did not err in failing to submit this mitigating circumstance.

[8] Defendant next contends by separate assignments of error that the trial court erroneously failed to instruct the jury on the following nonstatutory mitigating circumstances that were supported by the evidence: (i) that defendant told the circumstances surrounding the murder not for the purpose of avoiding responsibility for his crime but to explain his sense of remorse for not successfully stopping the attack on the victim; and (ii) that defendant was dominated by or influenced by Hill, who is approximately fifteen years his elder. Submission of a requested nonstatutory mitigating circumstance is required where:

"(1) the nonstatutory mitigating circumstance is one which the jury could reasonably find had mitigating value, and (2) there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury."

*State v. Green*, 336 N.C. 142, 182, 443 S.E.2d 14, 37 (quoting *State v. Benson*, 323 N.C. 318, 325, 372 S.E.2d 517, 521 (1988)), *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

In support of the nonstatutory mitigator that defendant testified to the circumstances of the crime to explain defendant's sense of remorse for not stopping the attack rather than to avoid responsibility, defendant directs us to his own testimony. Defendant testified that he feels sorry for the victim's family and that he blames himself because he kicked in the door, which action initiated the whole incident, and because he could have done more to stop Hill from killing the victim.

Assuming *arguendo* that the trial court erred in failing to submit this circumstance, any error was harmless beyond a reasonable doubt. In *State v. Blakeney*, 352 N.C. 287, 531 S.E.2d 799 (2000), *cert. denied*, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001), this Court held that the trial court's erroneous failure to submit the requested nonstatutory mitigating circumstance was harmless beyond a reasonable doubt as it "did not preclude any juror from considering and giving weight to any mitigating evidence underlying defendant's proposed circumstance." *Id.* at 317, 531 S.E.2d at 820. The Court noted that defense counsel argued to the jury the evidence underlying the requested circumstance and that the trial court submitted to the jury the catchall mitigating circumstance. *Id.* at 317-18, 531 S.E.2d at 820-21.

The jury in this case heard defendant's testimony supporting the circumstance at issue, and defendant's attorney argued in closing that defendant "is acutely aware of the tremendous treasure that his actions struck down. He knows that. He has changed. . . . He knows that it would have never occurred without him. He knows that." As in *Blakeney*, the jury in this case was able to consider this alleged mitigating evidence and was encouraged to do so by counsel's closing argument; the trial court submitted to the jury the catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9). Thus, any error was harmless beyond a reasonable doubt.

Defendant argues that the same evidence that supported submission of the (f)(5) statutory mitigating circumstance, that defendant acted under duress or domination of another, supports the nonstatutory mitigating circumstance that defendant was dominated or influenced by Hill, who is approximately fifteen years his elder. As noted above in discussing the (f)(5) mitigating circumstance, the evidence was insufficient to warrant submission of this nonstatutory mitigating circumstance. All the evidence, considered in the light most favorable to defendant, showed that defendant exhibited strong will with respect to Hill. During the charge conference the only evidence

STATE v. FLETCHER

[354 N.C. 455 (2001)]

to which defendant referred as supporting this mitigating circumstance was that he lived in Hill's house, that the only car to which he had access belonged to Hill, and that Hill was nearly fifteen years older than he. This evidence is insufficient to support a reasonable conclusion by a juror that defendant was dominated or influenced by Hill. Accordingly, we find no error in the trial court's refusal to submit this nonstatutory mitigating circumstance.

[9] Defendant next contends that the trial court erroneously failed to require the jury to make a factual determination of defendant's state of mind concerning the murder, pursuant to *Enmund v. Florida*, 458 U.S. 782, 73 L. Ed. 2d 1140 (1982), and *Tison v. Arizona*, 481 U.S. 137, 95 L. Ed. 2d 127 (1987). This Court has explained *Enmund* and *Tison* as follows:

> In *Enmund* the [United States Supreme] Court held that the Eighth Amendment forbids the imposition of the death penalty on a defendant who aids and abets in the commission of a felony in the course of which a murder is committed by others, when the defendant does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. *Enmund*, 458 U.S. at 801, 73 L. Ed. 2d at 1154. In a later case, however, the Court further construed its holding in *Enmund* and held that major participation in the felony committed, combined with reckless indifference to human life, is sufficient grounds for the imposition of the death penalty. *Tison v. Arizona*, 481 U.S. 137, 158, 95 L. Ed. 2d 127, 145 (1987).

*State v. McCollum*, 334 N.C. 208, 223, 433 S.E.2d 144, 151-52 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). Defendant acknowledges that this Court has held that no *Enmund/Tison* instruction is required when a defendant is convicted of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. *See State v. Robinson*, 342 N.C. 74, 88, 463 S.E.2d 218, 226 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 793 (1996). However, defendant argues that *Robinson* should not apply for the following reasons: (i) the resentencing jury was not the same as the guilt-phase jury; and (ii) as a defendant may be convicted of premeditated first-degree murder under a theory of acting in concert, the question of whether a defendant is guilty of premeditated murder is not necessarily the same question as whether a defendant intended to kill. We find both contentions without merit and, accordingly, find no error.

In support of his position, defendant cites *State v. Adams*, 347 N.C. 48, 490 S.E.2d 220 (1997), *cert. denied*, 522 U.S. 1096, 139 L. Ed. 2d 878 (1998), where this Court held that findings as to mitigating circumstances by one jury at an earlier sentencing are not binding on a new jury at a subsequent resentencing. *Id.* at 62, 490 S.E.2d at 227. Defendant states in a conclusory fashion that it follows from *Adams* that the predicate findings of the first jury as to guilt are not binding on a second jury with respect to the appropriateness of an *Enmund/Tison* instruction. We disagree. Defendant's interpretation would permit a resentencing jury to completely retry the issue of guilt even though the case was remanded pursuant to a holding that error occurred only in the sentencing proceeding, not in the guilt phase.

Defendant further relies on *Barnes*, 345 N.C. 184, 481 S.E.2d 44, to support the proposition that because a defendant may be convicted of premeditated first-degree murder under the principle of acting in concert, the question of whether a defendant is guilty of premeditated murder is not necessarily the same question as whether the defendant intended to kill. In *Barnes* the Court held that a defendant may be found guilty of premeditated first-degree murder by acting in concert without regard to which person committed which particular acts if the acts are done in pursuance of a common purpose to commit a crime or as a natural or probable consequence thereof. *Id.* at 233, 481 S.E.2d at 71. Thus, defendant argues, finding a defendant guilty of premeditated murder does not necessarily include a finding that a defendant intended to kill. Defendant further argues that under his description of events, he could have been convicted of premeditated first-degree murder by acting in concert with Hill pursuant to *Barnes*, yet have a jury instructed pursuant to *Enmund/Tison* find that defendant did not intend to kill.

Even if we assume *arguendo* that a finding of premeditation based on acting in concert does not necessarily show that the defendant intended to kill and that a defendant convicted of premeditated and deliberate murder by acting in concert is entitled to the *Enmund/Tison* instruction, this rule would be irrelevant in the present case. Defendant was convicted of murder based on premeditation and deliberation without any evidence or instruction regarding acting in concert. Defendant's contention that evidence during resentencing which showed that he acted in concert with another person mandated an *Enmund/Tison* instruction is unpersuasive. We have already held that this evidence was improperly admitted to raise

residual doubt as to defendant's conviction based on premeditation and deliberation. Accordingly, we hold that where the guilt-phase jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation without an instruction on acting in concert, an *Enmund/Tison* instruction is not required at sentencing. This assignment of error is overruled.

**[10]** Defendant next contends that ineffective assistance of counsel in violation of the Sixth Amendment mandates that he receive a new sentencing proceeding. Defendant specifically complains that during closing arguments counsel made the following statement to the jury with respect to the submitted aggravating circumstance that the murder was especially heinous, atrocious, or cruel: "Is it heinous, atrocious, and cruel? You bet. No doubt about that. I guess the real question is, what's [defendant's] involvement in that." As noted previously the trial court sustained the prosecutor's objection to this statement suggesting residual doubt and instructed the jury not to consider any argument that someone else was legally responsible for the murder. Defendant argues that the decision to make this concession, though agreed to by defendant, fell below the required objective standard of reasonableness.

When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693 (1984). In order to meet this burden, defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 80 L. Ed. 2d at 693.

This Court has held that an admission of guilt by trial counsel without defendant's consent is a *per se* violation of the Sixth Amendment right to effective assistance of counsel. *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986). The *Harbison* rule,

however, does not apply to sentencing proceedings. *State v. Boyd*, 343 N.C. 699, 723, 473 S.E.2d 327, 340 (1996), *cert. denied*, 519 U.S. 1096, 136 L. Ed. 2d 722 (1997); *Walls*, 342 N.C. at 57, 463 S.E.2d at 768. Accordingly, having determined that the alleged concession did not constitute ineffective assistance of counsel *per se*, we proceed to analyze counsel's actions under a traditional *Strickland* analysis.

We begin by addressing the first prong of the *Strickland* test, that counsel's errors were so serious as to violate defendant's constitutional right to counsel. The evidence in this case leaves little doubt that this murder was especially heinous, atrocious, or cruel. Defendant attacked an elderly woman in her home in the early morning hours, taking her from room to room while assaulting her in an effort to locate her valuables. The victim had a large area with several lacerations on the back of her head that went down to her skull. She suffered four lacerations to her forehead, all of which went down to the skull. Below two superficial cuts on the right side of the victim's neck, an incised wound had cut her jugular vein. Additionally, two incised wounds were inflicted on the left side of the victim's neck, and the victim had numerous defensive wounds on her hands. The pathologist testified that the lacerations were caused by a blunt object, whereas the incised wounds to the neck were caused by a knife-like object. Though the victim died as a result of these wounds, the evidence shows that she was conscious and ambulatory for a time after the attack, moving to a chair in a bedroom before succumbing to her wounds.

Given the overwhelming evidence that this murder was especially heinous, atrocious, or cruel, counsel could reasonably have decided upon a strategy of conceding this aggravating circumstance to gain credibility with the jury—credibility that may have later helped defendant with respect to mitigating circumstances. Defendant's argument that this tactical decision actually hurt defendant's credibility when the court instructed that the argument was improper does not persuade us that his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693. Under these facts counsel's strategy was not necessarily thwarted by the objection. Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear. On the record in this case, we conclude that defendant has failed to satisfy the first prong of the *Strickland* test; therefore, we hold that this ineffective assistance of counsel claim fails. *See id.* at

687, 80 L. Ed. 2d at 693 (holding that a claim of ineffective assistance of counsel fails "unless a defendant makes both showings").

[11] Defendant contends next that the trial court erred in overruling defendant's objection to the prosecutor's closing argument improperly urging the jury to consider the general deterrence value of capital punishment. We hold that the trial court did not err in overruling defendant's objection or in failing to intervene *ex mero motu* to later statements.

Defendant cites the following passage from the prosecutor's closing argument:

[PROSECUTOR]: . . . [T]he 12 of you will be acting as the voice and conscience of this community when you come in here and tell us what is the appropriate punishment in this case. What are the standards in this community? What will we do in Rutherford County for actions such as this?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

. . . .

[PROSECUTOR]: That's what you will be doing is acting as the voice and conscious [sic] of this community. Your words will ring out loud and clear through your verdict. That's why it is such a big responsibility. It's the standards of Rutherford County. We're not in California. We're not in Texas. We're not in Illinois. We want to know, what does a Rutherford County juror think about a case like this? That's what you tell us. It will be your collective voice.

The prosecutor later stated: "It's high time that if good people, like you, stand up and be judgmental and pass judgment and set the standard. He has no standards to do what he did. . . . Let your voice say, 'We won't tolerate this in Rutherford County.' " Along the same lines the prosecutor later argued:

Your voice, through this verdict, will ring out loud and clear out of this courtroom. It will tell us the answer to the question, Can you commit an act such as this man did? Can you kick in people's doors? Can you steal from them? Can you take their property? And not receive the ultimate punishment? Can that happen in Rutherford County? It shouldn't. It shouldn't. And you have the

opportunity and responsibility to say, We won't let it happen. Say, through your verdict, We will not tolerate one bit of murder or assault and battery. If you do this, you will pay the ultimate price. That's the right message that needs to come out of this case and out of your verdict. Say to [defendant] and to anyone who would follow in his footsteps, You cannot do that. You cannot come in here and talk us into doing something other than the ultimate punishment.

This Court has held that arguments based on general deterrence—that is, that the jury should impose the death penalty in the case before it to deter others from committing similar crimes—are improper. *State v. Kirkley*, 308 N.C. 196, 215, 302 S.E.2d 144, 155 (1983), *overruled on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). However, it is not improper for the State to "remind the jurors that 'they are the voice and conscience of the community.' " *McNeil*, 350 N.C. at 687-88, 518 S.E.2d at 505 (quoting *State v. Brown*, 320 N.C. 179, 204, 358 S.E.2d 1, 18, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987)).

Defendant objected only to the first quoted section above. That portion of the prosecutor's argument clearly urges the jury to act as the voice and conscience of the community and does not improperly argue general deterrence. Thus, that portion of the closing argument was proper; and the trial court did not err in overruling defendant's objection.

**[12]** As defendant did not object to the second or third quoted portions, "the standard of review is whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu*." *Roseboro*, 351 N.C. at 546, 528 S.E.2d at 8. Moreover, " 'the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " *State v. Hipps*, 348 N.C. 377, 411, 501 S.E.2d 625, 645 (1998) (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 114 (1999). While the prosecutor's statement that the jury should send a message with its verdict to defendant "and any who would follow in his footsteps" is arguably a reference to general deterrence, we decline to hold that this one brief comment out of thirty-two transcript pages of closing argument was so grossly improper as to warrant intervention *ex mero motu*. The

**STATE v. FLETCHER**

[354 N.C. 455 (2001)]

offending comment was not only brief, but its overall significance to the entire closing argument was minimal; and the comment was made in the context of a proper "voice and conscience of the community" argument. *See Hardy*, 353 N.C. at 137, 540 S.E.2d at 345 ("The objectionable statements were a passing reference . . . . In comparison to the prosecutor's entire closing argument, the comments were minor."). Furthermore, we note that even in *Kirkley* the Court held that the general deterrence argument was not so grossly improper as to warrant intervention *ex mero motu* where the prosecutor stated, "I'm asking you to impose the death penalty as a deterrent . . . ." *Kirkley*, 308 N.C. at 215, 302 S.E.2d at 155. Thus, we hold that the trial court did not err in failing to intervene *ex mero motu* during the prosecutor's arguments.

**[13]** Defendant's next contention is that the trial court erred in failing to intervene *ex mero motu* to prohibit the prosecutor's grossly improper arguments that jurors put themselves in the place of the victim and that the victim was tortured and begged for her life. Defendant argues that the prosecutor improperly asked the jurors to put themselves in place of the victim by asking the jury to "imagine" the victim's fear and the pain of the stabbings and stating that it could have been the home of one of the jurors or their family members.

Defendant relies on *McCollum*, 334 N.C. at 224, 433 S.E.2d at 152, for the proposition that this Court will not condone asking the jurors to put themselves in place of the victims. In *McCollum* the prosecutor asked the jurors to imagine that the eleven-year-old rape and murder victim was their own child, that the postmortem photographs were of their child, and that their child had been "split open" in an autopsy. *Id.* The trial court in *McCollum* overruled the defendant's objections to these statements. *Id.* This Court noted that while such comments are not condoned, the prosecutor did not misstate the evidence. *Id.* Moreover, the substantial weight of the evidence supporting the aggravating circumstances reduced the likelihood that the jury's decision was influenced by the prosecutor's closing argument. *Id.* at 224-25, 433 S.E.2d at 152-53. Hence the argument did not constitute prejudicial error. *Id.*

**[14]** The comments in this case were markedly less egregious than those in *McCollum*. The prosecutor did not ask the jurors to imagine themselves or a loved one as the victim, but merely asked them to imagine the fear and pain that the victim must have felt. Likewise, the

prosecutor's statement that the home could have been the home of one of the jurors did not ask the jurors to put themselves in the victim's place, but reiterated the random arbitrariness of this crime. These statements asked the jurors to make commonsense inferences and did not ask them to imagine being the victim. Given that the prosecutor in this case did not misstate the evidence; that the evidence supporting the aggravating circumstances was substantial; and that the Court in *McCollum* did not find error where the trial court overruled an objection to substantially more egregious statements, we decline to hold that the comments in this case were so grossly improper as to warrant intervention *ex mero motu*.

**[15]** Defendant also contends that the prosecutor inflamed the passion of the jury by speculating as to what occurred beyond the reasonable inferences from the evidence in the record.

> Counsel are entitled to argue to the jury all the law and facts in evidence and all reasonable inferences that may be drawn therefrom, but may not place before the jury incompetent and prejudicial matters and may not travel outside the record by interjecting facts . . . not included in the evidence.

*State v. Syriani*, 333 N.C. 350, 398, 428 S.E.2d 118, 144, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

Defendant refers to statements made by the prosecutor that the victim was watching television on the couch when the break-in occurred; ran into the kitchen and got a knife to defend herself; was "forced, literally tortured, into giving up the location of her valuables"; and probably begged for her life and asked for mercy. We hold that these statements are reasonable inferences from the evidence and, thus, are not improper arguments.

Testimony showed that the television was on when officers arrived and that the victim usually watched television immediately before she fell asleep. Thus, the jury could reasonably infer that the victim was lying down watching television when the break-in occurred. There was testimony that the blood spatter in the kitchen was the result of a struggle and that the victim had defensive wounds on her hands, and defendant testified that he had visions of a white woman holding a knife. One reasonable inference from this evidence is that defendant took the knife away from the victim in the kitchen and attacked her with it. The presence of the victim's blood in the kitchen and the dining room, the plundered personal possessions in

the dining room and bedroom, and the numerous wounds caused by two different weapons support an inference that the victim was taken from room to room and beaten to force her to identify the location of her valuables. Furthermore, given the prolonged nature of the attack and the evidence that the victim was conscious for a time after the attack, one may reasonably infer that the victim may have begged for mercy. Thus, we hold that the trial court did not err in failing to intervene *ex mero motu* to restrain the prosecutor's arguments.

## PRESERVATION ISSUES

Defendant raises eight additional issues that he concedes have previously been decided contrary to his position by this Court: (i) whether the instructions to the jury on the especially heinous, atrocious, or cruel aggravating circumstance were unconstitutionally vague, as they failed to distinguish death-eligible murders from those that are not death-eligible; (ii) whether the trial court erred in denying defendant's motion for mistrial after a witness gave unsolicited testimony of a prior attempted rape charge that was dismissed for lack of evidence; (iii) whether the trial court erred in using inherently vague terms to define defendant's burden of proof applicable to mitigating circumstances; (iv) whether the trial court erred in instructing the jury that the mitigating circumstances must outweigh the aggravating circumstances; (v) whether the trial court erred in instructing the jury such that jurors could disregard mitigating circumstances found in Issue Two when considering Issues Three and Four; (vi) whether the trial court erred in instructing the jury on Issues Three and Four that consideration of mitigating circumstances was discretionary; (vii) whether the trial court erred in instructing the jury that it must be unanimous to answer "No" on Issues One, Three, and Four; and (viii) whether the indictment is unconstitutional in that it failed to include all elements of first-degree murder and failed to include the aggravating circumstances relied upon by the State.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings. We have considered defendant's arguments on these issues and conclude that defendant has demonstrated no compelling reason to depart from our prior holdings. We thus overrule these assignments of error.

## PROPORTIONALITY

Finally, this Court exclusively has the statutory duty in capital cases, pursuant to N.C.G.S. § 15A-2000(d)(2), to review the record

and determine: (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *See McCollum*, 334 N.C. at 239, 433 S.E.2d at 161.

**[16]** After a thorough review of the transcript, record on appeal, briefs, and oral arguments of counsel, we are convinced that the jury's findings of the two aggravating circumstances submitted were supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *See State v. Robinson*, 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Our consideration is limited to those cases that are roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *See Syriani*, 333 N.C. at 400, 428 S.E.2d at 146. Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green*, 336 N.C. at 198, 443 S.E.2d at 47.

Defendant was convicted of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. Defendant was also convicted of first-degree burglary and robbery with a dangerous weapon. The jury found both of the aggravating circumstances submitted: (i) that the murder was committed while defendant was engaged in the commission of a burglary, N.C.G.S. § 15A-2000(e)(5); and (ii) that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9).

STATE v. FLETCHER

[354 N.C. 455 (2001)]

The trial court submitted five statutory mitigating circumstances for the jury's consideration: (i) defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (ii) the crime was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (iii) defendant's capacity to appreciate the criminality of his conduct was impaired, N.C.G.S. § 15A-2000(f)(6); (iv) defendant's age at the time of the crime, N.C.G.S. § 15A-2000(f)(7); and (v) the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). The jury found none of the statutory mitigating circumstances to exist. The trial court also submitted seventeen nonstatutory mitigating circumstances; the jury found four of these to exist.

We begin our proportionality analysis by comparing this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be disproportionate on seven occasions. *Benson,* 323 N.C. 318, 372 S.E.2d 517; *Stokes,* 319 N.C. 1, 352 S.E.2d 653; *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines,* 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate.

In four of the seven cases in which this Court has concluded that the death penalty was disproportionate, the especially heinous, atrocious, or cruel aggravating circumstance was not submitted to the jury, *Benson,* 323 N.C. 318, 372 S.E.2d 517; *Rogers,* 316 N.C. 203, 341 S.E.2d 713; *Hill,* 311 N.C. 465, 319 S.E.2d 163; *Jackson,* 309 N.C. 26, 305 S.E.2d 703, whereas in a fifth the circumstance was submitted to but not found by the jury, *Young,* 312 N.C. 669, 325 S.E.2d 181. As the jury in the present case found this aggravating circumstance existed, this case is clearly distinguishable from those five cases. "While this fact is certainly not dispositive, it does serve as an indication that the sentence of death in the present case is not disproportionate." *Walls,* 342 N.C. at 72, 463 S.E.2d at 777. The evidence in this case showed that defendant beat and stabbed the victim repeatedly while taking

her from room to room, forcing her to identify the location of her valuables. The victim tried to fend off defendant's attack to no avail. After attacking the victim with two different weapons, defendant left the victim conscious and dying. The victim managed to move to a chair in a bedroom before succumbing to her wounds. Furthermore, defendant was convicted in part under a theory of premeditation and deliberation. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *Artis*, 325 N.C. at 341, 384 S.E.2d at 506.

In the other two cases in which we have concluded that the death penalty was disproportionate, the jury did find that the murders were especially heinous, atrocious, or cruel. *Stokes*, 319 N.C. 1, 352 S.E.2d 653; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. However, both cases are distinguishable from the case at hand on other grounds.

In *Stokes* the Court emphasized that the defendant was found guilty of first-degree murder based only upon the felony murder rule; that there was little, if any, evidence of premeditation and deliberation; and that the defendant acted in concert with a considerably older co-felon. 319 N.C. at 24, 21, 352 S.E.2d at 666, 664. To the contrary, in the present case there was no proper evidence that defendant acted in concert with someone else; and the trial jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation as well as under the felony murder rule.

In *Bondurant* the defendant shot the victim but then immediately directed the driver of the car in which they had been riding to proceed to an emergency room. *Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182. In concluding that the death penalty was disproportionate, the Court focused on the defendant's immediate attempt to obtain medical assistance for the victim and the lack of any apparent motive for the killing. *Id.* In contrast, defendant in this case left the house while the victim lay conscious and dying. Furthermore, the trial jury found that defendant committed the murder in the course of a burglary, thus establishing his motivation for this senseless killing.

We further note that the resentencing jury found two aggravating circumstances in this case. Of the seven cases in which this Court has found a death sentence disproportionate, the jury found multiple aggravating circumstances to exist in only two. *Young*, 312 N.C. 669, 325 S.E.2d 181; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. As discussed above, *Bondurant* is clearly distinguishable. The Court in *Young*

focused in part on the failure of the jury to find the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. *Young*, 312 N.C. at 691, 325 S.E.2d at 194. As that aggravating circumstance was found to exist in this case, *Young* is also distinguishable.

We also consider cases in which this Court has found the death penalty to be proportionate. Defendant in this case broke into an elderly victim's home at night, stabbed and beat her in various rooms in the house, and left her to die. "A murder in the home 'shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure.' " *Adams*, 347 N.C. at 77, 490 S.E.2d at 236 (quoting *Brown*, 320 N.C. at 231, 358 S.E.2d at 34) (alterations in original). Furthermore, this Court has deemed the (e)(5) and (e)(9) aggravating circumstances, standing alone, to be sufficient to sustain a sentence of death. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). Viewed in this light we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

Defendant received a fair capital sentencing proceeding, free from prejudicial error; and the death sentence in this case is not disproportionate. Accordingly, the judgment of the trial court is left undisturbed.

NO ERROR.

Justice EDMUNDS concurring.

I agree with the result reached by the majority. However, because this case is now in a somewhat unusual procedural posture, I am concerned that the holding may be applied too broadly to limit proper closing argument in capital sentencing proceedings, during which counsel representing defendants convicted of first-degree murder routinely and justifiably seek to convince the sentencing jury that it should recommend a life sentence.

Both as a practical and as a legal matter, attorneys at a capital sentencing proceeding are bound by their trial tactics and by the jury verdict. However, here, because we had remanded defendant's case

for resentencing, that proceeding was conducted before a different jury than the one that heard the guilt-innocence phase. Defendant elected not to testify at the guilt-innocence phase, but he nevertheless presented a defense, offering witnesses who suggested that an enigmatic individual in a raincoat killed the victim. The jury found defendant guilty, and at the subsequent sentencing proceeding before that same jury, defendant presented evidence of various psychological difficulties but made no further representation that someone else was the murderer. *State v. Fletcher*, 348 N.C. 292, 323-29, 500 S.E.2d 668, 686-90 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 113 (1999). We vacated and ordered a new sentencing proceeding. *Id.* On remand, defendant jettisoned his first failed defense and took the stand to testify that his girlfriend, Lisa Hill, was the one who stabbed and bludgeoned the victim. This theory was inconsistent with that presented at the guilt-innocence phase, strongly suggesting that defendant was attempting to take advantage of the fact that he had a new jury to raise a different and presumably improved defense. In light of the fact that the first jury had rejected defendant's original defense and convicted him of the murder, I agree with the majority that the trial court's instruction to the second jury limiting its consideration of the new defense was correct.

Even so, I believe the procedural quirks in this case thwart the majority's efforts to address general principles relating to "residual doubt." Because the jury that sat during the sentencing proceeding was different from the jury that returned the guilty verdict and because defendant presented contradictory defenses to different juries, I believe the issues relating to "residual doubt" and a defendant's ability to present relevant evidence at sentencing are not clearly and cleanly before this Court now. In my view, there is a risk that the majority's discussion of "residual doubt" could be read expansively to preclude future defendants from raising legitimate issues at sentencing. For instance, a defendant who did not testify at trial might be prevented from offering, as mitigation evidence, his version of events. Similarly, a defendant who has professed his innocence throughout the guilt phase could not continue to tell his same story. N.C.G.S. § 15A-2000(a)(3) states that "[i]n the [sentencing] proceeding . . . all such [guilt phase] evidence is competent for the jury's consideration on punishment." Therefore, a defendant may ask a sentencing jury to consider all evidence presented at trial, not just that comporting with a guilty verdict or that tending to mitigate guilt. The extent (if any) to which this statute conflicts with a trial court's

ability to enforce the factual determination inherent in a jury verdict is clouded by the procedural twist in the case at bar. Accordingly, I would limit the majority holding to the facts now before us.

Justices ORR and BUTTERFIELD join in this concurring opinion.