STATE OF NORTH CAROLINA v. THOMAS HOWARD DUNCAN

No. COA07-85

(Filed 5 February 2008)

**Constitutional Law— effective assistance of counsel—failure to offer evidence of defendant's state of mind—failure to request instruction on diminished capacity**

Defendant was denied his constitutional right to effective assistance of counsel in a first-degree murder case based on his counsel's failure to offer any evidence as to defendant's state of mind at the time of the crime and his failure to request an instruction on diminished capacity, and the case is remanded for a new trial, because: (1) although it was exceedingly unlikely that de-

fendant would be found not guilty of murder in the face of the overwhelming evidence against him, there was a reasonable probability that evidence of defendant's state of mind might have led the jury to conclude that defendant's intoxication and mental problems were severe enough to negate the specific intent necessary for first-degree murder; and (2) there was no strategic motive behind trial counsel's deficient performance.

Judge HUNTER concurring in part and dissenting in part.

Appeal by defendant from judgment entered 28 June 2006 by Judge Gary E. Trawick in Superior Court, Brunswick County. Heard in the Court of Appeals 11 September 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General H. Dean Bowman, for the State.*

*Center for Death Penalty Litigation, by Lisa Miles, for defendant-appellant.*

WYNN, Judge.

When reviewing a claim for ineffective assistance of counsel, this Court considers whether the counsel's performance was deficient, and whether the "deficient performance prejudiced the defense."[1] Here, Defendant Thomas Howard Duncan contends his trial counsel failed to offer any evidence as to Defendant's state of mind at the time of the crime. Although it is exceedingly unlikely that, in the face of the overwhelming evidence against him, Defendant might have been found not guilty of the murder, we find that there is a reasonable probability that evidence to Defendant's state of mind might have led the jury to conclude that Defendant's intoxication and mental problems were severe enough to negate the specific intent necessary for first-degree murder. Accordingly, we remand for a new trial.

At trial, the State presented evidence that tended to show that on 20 June 2005, Defendant spent the day at home with his wife, Cathleen Duncan, as she kept their three-year-old grandson while their son and daughter-in-law, David and Jonetta Duncan, were at work. David and Jonetta had been married for ten or twelve years but had been separated for about two years at the time of the incident in question. At approximately 1:30 p.m. that day, David telephoned

---

1. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)).

Defendant and Cathleen to let them know that Jonetta would be picking up their child later that afternoon after work.

When Jonetta arrived at Defendant's house around 5:00 p.m., Cathleen let her inside, where Defendant was sitting in the front room in a rocking chair. When Jonetta repeatedly greeted Defendant, he initially made no reply and then "called her trash and stuff." As Cathleen got the child ready to go, Defendant again called Jonetta "trash," to which she responded, "well, we love you too, Howard." Cathleen and Jonetta began walking down the hall toward the back door for Jonetta to leave, when Defendant said, "you're crazy," and Cathleen testified that "[Jonetta] sa[id], you're crazy, too, or something like." Cathleen recalled that Defendant then replied, "oh, no, you didn't call me crazy" and "jumped up and got by me and got to the back door." At that point, Cathleen was still in the hall while Jonetta and Defendant were on the back porch. Cathleen stated that she heard a noise that sounded like a slap but did not see what actually happened; she then heard Jonetta say, "oh, no, you didn't" and looked up to see Defendant with a gun.

Cathleen testified that she tried without success to take the gun from Defendant and then "grabbed the baby and ran and got the phone . . . [to call] 911." While running to get the phone, she heard five or six gunshots; she was talking to 911 emergency personnel when Defendant "came in and . . . [said], I've done it, I've killed her, I done it, I'm gone." Defendant washed his hands in the sink in the kitchen and put the gun away, and Cathleen took the gun and hid it. Cathleen also stated that, during that time, Defendant got a kitchen knife out of a drawer, showed it to her, and said, "this is what she came over to get me with." Cathleen then went outside to wait for the police and emergency personnel to arrive.

When Deputy James Sheehan of the Brunswick County Sheriff's Department arrived at the house, Cathleen began to tell him what was going on, and he observed the body of Jonetta on the porch. As he approached the porch, he saw Defendant "staring out the window" at him, and he began giving Defendant verbal commands to show his hands. According to Deputy Sheehan, Defendant "wouldn't move, he just sat there and stared . . . . saying nothing back, . . . just looking at [Deputy Sheehan] though the window." After Deputy Sheehan repeatedly instructed Defendant to come outside, Defendant did leave the house, and Deputy Sheehan placed him in custody.

On cross examination, Cathleen Duncan testified that Defendant had been drinking on the day of the incident; at the time he shot Jonetta, he had consumed a pint of Wild Irish Rose wine and approximately sixty ounces of beer. Cathleen stated that Defendant had the wine between ten o'clock that morning and 1:30 p.m., when David called to say Jonetta would be picking up their son, and that he had the beer between the 1:30 phone call and five o'clock, when Jonetta arrived. Although that amount was "about the same" as what Defendant normally drank, Cathleen also noted that he drank "not quite everyday, but off and on." According to Cathleen, on the day of the shooting Defendant was taking Amitriptyline for depression, a drug that is not supposed to be mixed with alcohol. Cathleen asserted that Defendant "just didn't look right" to her on the day of the shooting, and confirmed that he was on disability for a nerve condition and had previously been hospitalized for nerves and depression.

Following closing arguments, the trial court denied defense counsel's request for an instruction on self-defense and instructed the jury only on first-degree murder, second-degree murder, and voluntary manslaughter. During deliberations, the jury asked to have the instructions as to first-degree murder, second-degree murder, and voluntary manslaughter read to them again. The jury subsequently returned a verdict finding Defendant guilty of first-degree murder, and the trial court sentenced him to life in prison without possibility of parole.

Defendant now appeals, arguing that (I) he was denied his constitutional right to effective assistance of counsel; (II) the trial court committed plain error by failing to instruct the jury on diminished capacity; and (III) the trial court committed plain error by permitting a juror to examine the gun used and by commenting on the significance of that examination.

Defendant contends that he was denied his state and federal constitutional rights to effective assistance of counsel by his trial counsel's failure to present promised evidence of Defendant's state of mind at the time of the shooting, and by his trial counsel's failure to request a diminished capacity instruction to the jury. According to Defendant, the evidence showed that he did not have the mental capacity to form the specific intent necessary to be guilty of first-degree murder, yet his trial counsel failed either to argue this point to the jury or to request a jury instruction as to how his diminished capacity might have affected his ability to form the specific intent to

commit murder. Although we leave for a jury to determine whether the State's evidence does, in fact, show beyond a reasonable doubt that Defendant had the capacity to form the requisite intent, we agree that defense counsel's failure to request an instruction on diminished capacity constituted ineffective assistance of counsel serious enough to warrant a new trial.

To determine whether a criminal defendant received ineffective assistance of counsel, we follow the two-part test established by our state and federal Supreme Courts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)).

It is not enough for a defendant to show only that the "errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test[.]" *Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697 (citation omitted). Rather, error does not warrant reversal " 'unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.' " *State v. Cummings*, 174 N.C. App. 772, 777, 622 S.E.2d 183, 186 (2005) (quoting *Braswell*, 312 N.C. at 563, 324 S.E.2d at 248), *disc. review denied*, 361 N.C. 172, 641 S.E.2d 306 (2006), *cert. denied*, 127 S. Ct. 2441, 167 L. Ed. 2d 1140 (2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698.

In the instant case, there was never any dispute that Defendant shot and killed Jonetta Duncan. Rather, the only issue in question at trial was the degree of Defendant's culpability for her death, which turned entirely on his state of mind at the time of the murder. As such, Defendant's trial counsel made the following assertions in his opening arguments to the jury:

[Defendant's] wife is gonna testify and [Defendant] is gonna testify—expected to testify. It will be your job to sort out what the facts are. But [Defendant] will testify and he will tell you what was going through his mind at the time of the shooting. He'll tell you that he felt it necessary to shoot her as she was coming upon—coming upon him. However, at the close of the evidence the one thing that will be clear is that there was no premeditation and there was no deliberation, there was no malice.

Nevertheless, Defendant did not testify in his own defense; instead, only three witnesses, all of them for the State—Cathleen Duncan, Deputy Sheehan, and a crime scene investigator—testified at trial. Defense counsel did attempt to question Cathleen on cross examination as to a possible motive of self-defense related to an earlier assault against Defendant's son, which Defendant allegedly believed was orchestrated by Jonetta, but the testimony was excluded as having no basis. The only other testimony elicited by defense counsel as to Defendant's state of mind at the time of the shooting related to the amount of alcohol Defendant had consumed and the antidepressant he was taking. Defense counsel offered no expert witness to explain how the alcohol or drugs might have affected Defendant's ability to form the specific intent to kill Jonetta, or any other testimony about Defendant's anxiety, depression, or time spent in a mental health facility.

Defendant's trial counsel did make a motion to dismiss the charge of first-degree murder due to insufficient evidence as to premeditation and deliberation, arguing that there were no threats made and the shots were fired in quick succession, with no hesitation; that motion was denied. In his closing argument to the jury, counsel likewise discussed the need for the State to prove premeditation and deliberation in order to sustain a charge of first-degree murder, also noting that the difference between that charge and the lesser-included offenses was "what's going on in [Defendant's] mind." As for Defendant's drinking and medication, trial counsel referred to those facts and said, "Now, these aren't being offered as excuses, okay, but these are relevant to whether or not [Defendant] premeditated and deliberated." Later in his closing argument, he referred to Defendant's "warped, drugged, alcohol induced state" at the time of the killing. Nevertheless, defense counsel made no request to the trial court for a jury instruction on diminished capacity.

The North Carolina pattern jury instruction for diminished capacity reads as follows:

You may find there is evidence to show that the defendant was [intoxicated] [drugged] [lacked mental capacity] at the time of the acts alleged in this case.

Generally, [voluntary intoxication] [a voluntary drugged condition] is not a legal excuse for crime.

However, if you find that the defendant [was intoxicated] [was drugged] [lacked mental capacity], you should consider whether this condition affected his ability to formulate the specific intent which is required for conviction of first degree murder. In order for you to find the defendant guilty of first degree murder, you must find, beyond a reasonable doubt, that he killed the deceased with malice and in the execution of an actual, specific intent to kill, formed after premeditation and deliberation. If as a result of [intoxication] [a drugged condition] [lack of mental capacity] the defendant did not have the specific intent to kill the deceased, formed after premeditation and deliberation, he is not guilty of first degree murder.

Therefore, I charge that if, upon considering the evidence with respect to the defendant's [intoxication] [drugged condition] [lack of mental capacity], you have a reasonable doubt as to whether the defendant formulated the specific intent required for conviction of first degree murder, you will not return a verdict of guilty of first degree murder.

N.C.P.I.—Crim. 305.11, Voluntary Intoxication, Lack of Mental Capacity—Premeditated and Deliberate First Degree Murder. Generally, such an instruction is warranted when "the evidence of defendant's mental condition is sufficient to cause a reasonable doubt in the mind of a rational trier of fact as to whether the defendant was capable of forming the specific intent to kill the victim at the time of the killing." *State v. Clark*, 324 N.C. 146, 163, 377 S.E.2d 54, 64 (1989).

Moreover, if there is evidence from which an inference can be drawn that the defendant committed the act without the requisite criminal intent, then the law with respect to that intent should be explained and applied to the evidence by the trial court. *State v. Walker*, 35 N.C. App. 182, 186, 241 S.E.2d 89, 92 (1978). Diminished capacity may negate the "ability to form the specific intent to kill required for a first-degree murder conviction on the basis of premeditation and deliberation." *State v. Page*, 346 N.C. 689, 698, 488 S.E.2d

225, 231 (1997), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998). Notably, "[t]he ability to choose is not necessarily inconsistent with a diminished capacity defense in that the mere decision to commit an act does not satisfy the test for specific intent." *State v. Roache*, 358 N.C. 243, 282, 595 S.E.2d 381, 407 (2004); *see also State v. Keel*, 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992) (holding that "the State must show more than an intentional act by the defendant" in order to prove specific intent).

Here, the record reflects a "reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different[.]" *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249. Although it is exceedingly unlikely that, in the face of the over-whelming evidence against him, Defendant might have been found not guilty of the murder of Jonetta, there is a reasonable possibility that a diminished capacity instruction—or any evidence or testimony as to Defendant's state of mind, as promised by trial counsel in his opening statement—might have led the jury to conclude that his intoxication and mental problems were severe enough to negate the specific intent necessary for first-degree murder.

Indeed, the State addressed the question of premeditation and deliberation in its closing arguments by essentially arguing that Defendant's intent could be shown from what he actually did, namely, hitting Jonetta with five of six shots fired, despite the alcohol he has consumed, as well as by his actions of washing his hands and getting a kitchen knife immediately afterwards. Had the jury been instructed as to the possible effect of intoxication on the ability to form intent, there is a reasonable possibility that Defendant might have been con-victed of a lesser-included offense, either second-degree murder or voluntary manslaughter.

Although "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear[,]" *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 550 (2001), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73 (2002), we can discern no strategic motive behind trial counsel's deficient performance in the instant case. Rather, although he attempted to argue that the State had failed to prove premeditation and deliberation beyond a reasonable doubt, he failed to make any argument to the jury as to intoxication or dimin-ished capacity, suggesting that he was unaware of the possibility of this affirmative defense or jury instruction. Defense counsel prom-ised in his opening statement to the jury that he would offer evidence

as to Defendant's state of mind, but he failed to do so, undercutting any possible defense that Defendant could offer to the serious charges against him. In such circumstances, we find that Defendant was denied his constitutional right to effective assistance of counsel and remand for a new trial.

Though we dispositively find Defendant's argument as to ineffective assistance of counsel to be persuasive, we have further examined Defendant's remaining issues and find them to be without merit.

New trial.

Judge JACKSON concurs.

Judge HUNTER dissents in a separate opinion.

HUNTER, Judge, concurring in part and dissenting in part.

I concur with the majority inasmuch as they conclude that defendant's assignments of error not relating to the ineffective assistance of counsel claim are without merit, but I would dismiss the ineffective assistance of counsel claim without prejudice, allowing defendant to reassert the claim during a subsequent motion for appropriate relief proceeding.

This Court has held that an "ineffective assistance of counsel claim may be brought on direct review 'when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' " *State v. Pulley*, 180 N.C. App. 54, 69, 636 S.E.2d 231, 242 (2006) (quoting *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001)). However, "[i]f an ineffective assistance of counsel claim is prematurely brought, this Court may dismiss the claim without prejudice, allowing the defendant to reassert the claim during a subsequent motion for appropriate relief proceeding." *Id.*

In *Pulley*, this Court dismissed the defendant's ineffective assistance of counsel claim without prejudice where the alleged trial counsel errors related to trial strategy. *Id.* at 70, 636 S.E.2d at 242-43. The rationale behind such dismissals is clear:

To defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant

to trial counsel, as well as defendant's thoughts, concerns, and demeanor. *See [State v. Taylor*, 327 N.C. 147, 159-60, 393 S.E.2d 801, 809 (1990)] (Meyer, J., dissenting). "[O]nly when all aspects of the relationship are explored can it be determined whether counsel was reasonably likely to render effective assistance." *Id.* at 161, 393 S.E.2d at 810 (Meyer, J., dissenting) (citing *Harris v. Commonwealth*, 688 S.W.2d 338 (Ky. Ct. App. 1984), *cert. denied*, 474 U.S. 842, 88 L. Ed. 2d 104 (1985)). Thus, superior courts should assess the allegations in light of all the circumstances known to counsel at the time of the representation. *Id.* (noting that the performance of trial counsel must be analyzed according to the circumstances of each particular case); *see also Strickland v. Washington*, 466 U.S. 668, 693, 80 L. Ed. 2d 674, 697 (1984) (holding that "an act or omission that is unprofessional in one case may be sound or even brilliant [trial strategy] in another"). On remand of this case, the superior court should take evidence, make findings of fact and conclusions of law, and order review of all files and oral thought patterns of trial counsel and client that are determined to be relevant to defendant's allegations of ineffective assistance of counsel.

*State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000). Simply stated, the trial court is in a better position to determine whether a counsel's performance: (1) was deficient so as to deprive defendant of " 'counsel' " guaranteed under the Sixth Amendment; and (2) prejudiced defendant's defense to such an extent that the trial was unfair and the result unreliable. *See State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)).

Here, defendant alleges errors relating to his trial counsel's strategy to pursue a defense based on self-defense and not placing defendant on the stand. Accordingly, under *Pulley*, the proper action would be to dismiss the case without prejudice, allowing defendant to file a motion for appropriate relief with the trial court. Because the trial court is in the best position to review defendant's counsel's performance under *Braswell* in this case, I respectfully dissent from the majority's opinion regarding defendant's ineffective assistance of counsel claim.