HUNTER, Judge.
 

 Carnell Tyrone Streater ("defendant") appeals from judgment entered after a jury found him guilty of: (1) first-degree sexual offense pursuant to N.C. Gen.Stat. § 14-27.4(a) and (2) first-degree rape pursuant to N.C. Gen.Stat. § 14-27.2(a). We award defendant a new trial on his first-degree sexual offense charge and hold there to be no error in his first-degree rape conviction or the judgment entered thereon.
 

 I. Background
 

 Defendant was indicted for first-degree statutory sexual offense and first-degree statutory rape on 13 March 2006. The indictments alleged that "between the 1st day of October, 2004 and the 31st day of March, 2005" defendant engaged in a sex offense and vaginal intercourse with B.H.S. ("the victim").
 

 The State's evidence presented at trial tended to show that defendant lived with the victim and Rosanna Nicole Bacon ("Bacon"), the victim's mother. Bacon worked at a dance club about five nights a week from approximately 5:30 p.m. to 4:00 a.m. Defendant often watched the victim while Bacon was at work. The victim testified that defendant "would do things [she] didn't like" while
 
 *367
 
 Bacon was at work. Defendant would put "[h]is private" inside of the victim's "[f]ront and back" privates and tell the victim he "would ground [her]" if she told anyone. This happened "[a] lot" and the victim "felt scared to" tell Bacon.
 

 Around October of 2005, Bacon "wanted [the victim] to go stay with [the victim's] aunt and uncle so [Bacon] could get [her]self together. . . ." The Alamance County Department of Social Services ("DSS") received a Protective Services report regarding the victim on 27 January 2006. The victim's aunt brought the victim to DSS's interview facility on 30 January 2006. At the interview, the victim described defendant's actions to DSS's child abuse investigator Leslie Jones ("Jones").
 

 On 3 February 2006, Dr. Joseph R. Pringle, Jr. ("Dr. Pringle") examined the victim at the request of DSS. Dr. Pringle conducted a full examination of the victim's vaginal and anal openings. The victim's "vaginal opening was abnormal in several ways[:]" (1) "it was slightly larger than . . . a child of her age[;]" (2) "there w[ere] deep notches at the upper part of the vaginal opening . . . at 10:00 o'clock and 2:00 o'clock[;]" and (3) "[t]here was also a small scar just inside the rim of the vaginal opening that looked like a healed laceration. . . ." The victim's "anal opening looked normal in [its] size, shape and caliber."
 

 Defendant testified in his own defense and denied the charges. On 21 February 2008, a jury found defendant guilty of first-degree sexual offense and first-degree rape. The trial court determined defendant to be a prior record level III offender, consolidated the convictions, and sentenced him to a minimum of 269 and a maximum of 332 months' incarceration. Defendant appeals.
 

 II. Issues
 

 Defendant argues the trial court committed plain error when it admitted: (1) Dr. Pringle's testimony that sexual abuse occurred; (2) Dr. Pringle's testimony that the victim's physical condition was consistent with her history; (3) Jones's testimony about the sufficiency of the victim's initial DSS interview; (4) the victim's testimony about the truthfulness of her testimony; and (5) evidence of defendant's prior bad acts. Defendant also argues he received ineffective assistance of counsel.
 

 III. Dr. Pringle's Testimony
 

 Defendant argues he is entitled to a new trial on his first-degree sex offense charge because the trial court committed plain error when it admitted Dr. Pringle's testimony that his medical findings were consistent with the victim's history. We agree.
 

 In
 
 State v. Stancil,
 
 our Supreme Court stated:
 

 In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has
 
 in fact
 
 occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.
 

 355 N.C. 266
 
 , 266-67,
 
 559 S.E.2d 788
 
 , 789 (2002) (citations omitted).
 

 Here, following Dr. Pringle's testimony regarding the alleged vaginal penetration, the prosecutor questioned Dr. Pringle regarding the alleged anal penetration:
 

 Q Can you explain to the ladies and gentlemen when you have a history as described by [the victim] and you moved to examine the anus what would you be looking for as far as that part of the body is indicated?
 

 A We are looking for a natural laxity, gaping anal opening caused by a breakdown of the anal sphincter muscle that would result in an anal laxity with a breakdown of the anal sphincter. We would look for fresh lacerations or tears if they were recently created.
 

 Q And in reviewing of [sic] the examination of [the victim] at that time, did you make any significant findings there?
 

 A No. I thought her anal opening looked normal in her [sic] size, shape and caliber. There [were] no hemorrhoids or fissures or splits in the anal wall. It looked normal.
 

 *368
 
 Q Based on the history that you received from [the victim], potentially repeated penetration of the defendant's penis into the anal area, would you find that inconsistent with your medical findings of no trauma or would you find that consistent with it?
 

 A I think it was consistent with the findings. She may not, despite having been anally penetrated, she may not have had any physical findings. In many cases it is common to have a normal exam even after an allegation of physical sexual abuse in that area.
 

 Dr. Pringle's testimony shows there was no physical evidence of anal penetration. The trial court therefore erred when it admitted Dr. Pringle's testimony that his findings were consistent with "the history that [he] received from [the victim]" of repeated anal penetration. "[S]uch testimony [was] an impermissible opinion regarding the victim's credibility."
 

 Id.
 

 (citations omitted). Had Dr. Pringle testified regarding the profiles of sexually abused children rather than the victim's history, his testimony would have been proper under
 
 Stancil.
 

 Because defendant failed to object or move to strike this testimony, we must determine whether this error amounted to plain error.
 

 Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.
 

 State v. Walker,
 

 316 N.C. 33
 
 , 39,
 
 340 S.E.2d 80
 
 , 83 (1986) (citations omitted).
 

 Here, the jury had only the testimony of the victim and corroborative testimony. The victim's testimony was the only direct evidence implicating defendant on the charge of first-degree sexual offense. Dr. Pringle's testimony amounted to an improper opinion on the victim's credibility and it had a probable impact on the jury's result.
 
 See State v. O'Connor,
 

 150 N.C.App. 710
 
 , 712,
 
 564 S.E.2d 296
 
 , 297 ("[B]ecause there was no physical evidence of abuse and the State's case was almost entirely dependent on J.M.'s credibility with the jury, the admission of Dr. Brown's statement was plain error." (citations omitted)),
 
 disc. review denied,
 

 356 N.C. 173
 
 ,
 
 567 S.E.2d 144
 
 (2002);
 
 State v. Couser,
 

 163 N.C.App. 727
 
 , 731,
 
 594 S.E.2d 420
 
 , 423 (2004) ("We conclude that the impermissible expert medical opinion evidence had a probable impact on the jury's result because it amounted to an improper opinion on the victim's credibility, whose testimony was the only direct evidence implicating defendant." (citations omitted).). Defendant is entitled to a new trial on the charge of first-degree sexual offense. In light of this holding, we review defendant's remaining assignments of error only as they relate to his first-degree rape conviction.
 

 Defendant's remaining arguments with regard to Dr. Pringle's testimony are that the trial court erred when it admitted Dr. Pringle's testimony that the victim's physical condition was consistent with her history and that this testimony was not helpful to the jury. We disagree.
 

 "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen.Stat. § 8C-1, Rule 702(a) (2005). "[O]nce the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable (and, of course, relevant), any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility."
 
 Howerton v. Arai Helmet, Ltd.,
 

 358 N.C. 440
 
 , 461,
 
 597 S.E.2d 674
 
 , 688 (2004) (citation omitted).
 

 *369
 
 Here, Dr. Pringle was qualified as "an expert in the field of pediatrics." Dr. Pringle testified that the victim's history of repeated vaginal penetration was consistent with his findings made during his examination of the victim's vaginal opening. This testimony was not impermissible opinion testimony regarding the victim's credibility because Dr. Pringle's previous testimony established the existence of physical evidence supporting a diagnosis of sexual abuse.
 
 Stancil,
 

 355 N.C. at 266-67
 
 ,
 
 559 S.E.2d at 789
 
 . Once the trial court accepted Dr. Pringle as an expert, controversy over his opinion goes to the weight of his testimony, not its admissibility.
 
 Howerton,
 

 358 N.C. at 461
 
 ,
 
 597 S.E.2d at 688
 
 . The trial court did not err when it allowed Dr. Pringle to testify that his physical findings were consistent with the victim's history. These assignments of error are overruled.
 

 IV. Jones's Testimony
 

 Defendant argues the trial court committed plain error when it allowed Jones's testimony about the victim's interview at DSS "because it was 1) opinion evidence a legal standard had been met, and 2) evidence on [the victim's] credibility." We disagree.
 

 Jones testified that as a child abuse investigator she conducts forensic interviews of children to determine "whether the allegations [contained in the Protective Services report] are true or false." After playing a portion of the videotaped interview of the victim for the jury, the following exchange occurred between the prosecutor and Jones:
 

 Q During this part of the video you and [the victim] are out of the room; is that correct?
 

 A Yes.
 

 Q Where did you go?
 

 A I walked up with [the victim] where there was another play area and walked back down the hall.
 

 Q Did you meet with anybody at that time?
 

 A I spoke with Detective Kelly.
 

 . . . .
 

 Q What was the topic of your discussion? Don't say what anybody else said, but what did you talk about?
 

 A Detective Kelly and I talked about was there any additional information or any other questions that need to be asked.
 

 Q Is that normal protocal [sic] that you take a break and ask if there's any other questions that anybody needs to ask?
 

 A Right.
 

 . . . .
 

 Q What did you tell [Detective Kelly] about what was [sic] the answers of the child?
 

 A I felt from that interview there was enough.
 

 Q For the allegations?
 

 A For the allegations on the report.
 

 Defendant correctly notes that in
 
 State v. Parker,
 
 our Supreme Court stated:
 

 An expert
 
 may not testify regarding whether a legal standard or conclusion has been met "at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness." Testimony about a legal conclusion based on certain facts is improper, while opinion testimony regarding underlying factual premises is allowable.
 

 354 N.C. 268
 
 , 289,
 
 553 S.E.2d 885
 
 , 900 (2001) (citations omitted) (emphasis supplied),
 
 cert. denied,
 

 535 U.S. 1114
 
 ,
 
 122 S.Ct. 2332
 
 ,
 
 153 L.Ed.2d 162
 
 (2002).
 
 Parker
 
 is not applicable here because Jones did not testify as an expert. More importantly, however, Jones did not render an opinion that sexual abuse had occurred. Jones merely explained her usual protocol in forensic interviews and stated she thought the first portion of the interview was sufficient to support the allegations contained in the Protective Services report. The trial court properly allowed Jones's testimony. This assignment of error is overruled.
 

 V. The Victim's Testimony
 

 Defendant argues the trial court committed plain error when it admitted the victim's testimony "that she `told the truth' and `swore to Jesus[.]'" We disagree.
 

 "The question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone."
 
 State v.
 

 *370
 

 Solomon,
 

 340 N.C. 212
 
 , 221,
 
 456 S.E.2d 778
 
 , 784,
 
 cert. denied,
 

 516 U.S. 996
 
 ,
 
 116 S.Ct. 533
 
 ,
 
 133 L.Ed.2d 438
 
 (1995). "Therefore, . . . it is improper for . . . counsel to ask a witness (who has already sworn an oath to tell the truth) whether he has in fact spoken the truth during his testimony."
 
 State v. Chapman,
 

 359 N.C. 328
 
 , 364,
 
 611 S.E.2d 794
 
 , 821 (2005).
 

 In
 
 Chapman,
 
 our Supreme Court stated:
 

 [T]he error cited by [the] defendant involve[d] the prosecutor's questions to the State's witness after that witness's credibility had been attacked. Moreover, [the] defendant did not object to the prosecutor's questions concerning [the witness's] truthfulness at trial; thus, [the] defendant must show plain error to prevail on appeal. As stated earlier, plain error is error "`so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" After thorough review of the record, we cannot say that [the witness's] responses probably altered the outcome of the trial.
 

 359 N.C. at 364
 
 ,
 
 611 S.E.2d at 821
 
 (citations omitted).
 

 Here, the following exchange occurred between the prosecutor and the victim at the end of the victim's direct examination:
 

 Q Now, earlier when you came up to the witness stand and Judge Klass had you put your hand on the Bible and swear that you would tell the truth, do you understand what that meant?
 

 A Yes.
 

 Q When you put your hand on the Bible, who were you swearing you were going to tell the truth to?
 

 A Jesus.
 

 Q Have you told the truth to these folks here today?
 

 A Yes.
 

 Like
 
 Chapman,
 
 the error cited by defendant involves the prosecutor's questions to the State's witness. Unlike
 
 Chapman
 
 however, the victim's credibility had not been attacked on cross-examination. The victim's ability to tell the truth was only questioned during
 
 voir dire.
 
 The trial court erred when it allowed the victim's testimony about the truthfulness of her previous testimony.
 

 Id.
 

 In light of the remainder of the victim's testimony, the physical evidence of vaginal penetration presented by Dr. Pringle, and the victim's prior consistent statements made to Jones, we cannot say that the victim's testimony "`tilted the scales' and caused the jury to reach its verdict convicting . . . defendant" of first-degree rape.
 
 Walker,
 

 316 N.C. at 39
 
 ,
 
 340 S.E.2d at 83
 
 . Likewise, we cannot say the victim's testimony that she swore she was going to tell the truth to "Jesus" probably altered the jury's verdict on the charge of first-degree rape.
 

 Id.
 

 The admission of the victim's testimony did not constitute plain error. This assignment of error is overruled.
 

 VI. Defendant's Prior Bad Acts
 

 Defendant argues the trial court committed plain error when it "admitted . . . Bacon's `other crimes' character evidence about defendant's prior incarceration, drug use, and non-sexual physical assault of [the victim] into evidence. . . ." We disagree.
 

 N.C. Gen.Stat. § 8C-1, Rule 404(b) (2005) states:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
 

 During the State's direct examination of Bacon, she disclosed the following facts: (1) defendant was previously incarcerated; (2) defendant used marijuana while he lived with Bacon and the victim; and (3) she walked in on defendant "whooping" the victim with a belt and thought it might have been because the victim "us[ed] the bathroom on the bed or on herself or something."
 

 After the State presented its case, defendant took the stand to testify on his own behalf. Defendant stated during his direct examination that he sold drugs to help out around the house, "got busted[,]" and was
 
 *371
 
 incarcerated first for "six to nine months[]" and then for "111 days." The following exchange occurred during the State's cross-examination of defendant:
 

 Q [Defendant], what have you been tried and convicted of in the last ten years that carries a jail sentence of 60 days or more?
 

 A Drugs.
 

 Q Possession with intent to sell and deliver marijuana October of '01?
 

 A Yeah.
 

 Q Anything else?
 

 A Crack.
 

 Q Possession with intent to sell and deliver cocaine August of '04?
 

 A Yeah.
 

 Q Anything else?
 

 A Some more crack.
 

 Q Some more crack?
 

 A Yeah.
 

 Q Anything else?
 

 A No.
 

 Q Assault on a female maybe in May of 2002?
 

 A Yeah, yeah.
 

 Q Larceny in 2000?
 

 A Yeah.
 

 The trial court erred when it admitted Bacon's testimony that defendant was previously incarcerated and used marijuana while living with Bacon and the victim. This evidence was admitted before defendant placed his credibility at issue by testifying.
 
 See State v. Norkett,
 

 269 N.C. 679
 
 , 681,
 
 153 S.E.2d 362
 
 , 363 (1967) ("[The] [d]efendant testified, but did not otherwise put his character in issue. For purposes of impeachment, he was subject to cross-examination as to convictions for unrelated prior criminal offenses."). Nonetheless, in light of the other similar evidence properly admitted at trial, we are not "convinced that absent the error the jury probably would have reached a different verdict."
 
 Walker,
 

 316 N.C. at 39
 
 ,
 
 340 S.E.2d at 83
 
 .
 

 The trial court properly admitted Bacon's testimony regarding the "whooping" incident. The State's evidence tended to show that the victim began "wetting the bed" around the time of the alleged sexual abuse. Bacon's testimony about the "whooping" incident therefore tended to establish defendant's intent to conceal the alleged sexual abuse. The trial court properly admitted this testimony pursuant to N.C. Gen.Stat. § 8C-1, Rule 404(b). This assignment of error is overruled.
 

 VII. Ineffective Assistance of Counsel
 

 Defendant argues he received ineffective assistance of counsel and is entitled to a new trial.
 

 A defendant's ineffective assistance of counsel claim may be brought on direct review "when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." If an ineffective assistance of counsel claim is prematurely brought, this Court may dismiss the claim without prejudice, allowing the defendant to reassert the claim during a subsequent motion for appropriate relief proceeding.
 

 State v. Pulley,
 

 180 N.C.App. 54
 
 , 69,
 
 636 S.E.2d 231
 
 , 242 (2006) (citations omitted),
 
 disc. review denied,
 

 361 N.C. 574
 
 ,
 
 651 S.E.2d 375
 
 (2007). "Simply stated, the trial court is in a better position to determine whether a counsel's performance: (1) was deficient so as to deprive defendant of `"counsel"' guaranteed under the Sixth Amendment; and (2) prejudiced defendant's defense to such an extent that the trial was unfair and the result unreliable."
 
 State v. Duncan,
 

 188 N.C.App. 508
 
 , 517,
 
 656 S.E.2d 597
 
 , 603 (Hunter, J., dissenting),
 
 per curiam reversed,
 

 362 N.C. 665
 
 , 666,
 
 669 S.E.2d 738
 
 , 738 (2008) ("For the reasons stated in the dissenting opinion of the Court of Appeals, the decision of the Court of Appeals is reversed. . . .").
 

 Here, defendant's alleged errors relate to his counsel's failure to object at trial. Under
 
 Pulley,
 
 the proper action is to dismiss this assignment of error without prejudice, allowing defendant to file a motion for appropriate relief with the trial court. The trial court is in the best position to review defendant's counsel's performance.
 

 *372
 

 VIII. Conclusion
 

 For the foregoing reasons, we award defendant a new trial on the charge of first-degree sexual offense and hold there to be no error in defendant's first-degree rape conviction or the judgment entered thereon.
 

 No error in part and new trial in part.
 

 Judges McGEE and JACKSON concur.