TYSON, Judge.
Jamonte Williamson ("Defendant") appeals from his conviction of taking indecent liberties with a child. Defendant's claim of ineffective assistance of counsel is without merit and denied.
I. Background
N.K. was fourteen years old in February 2012. N.K.'s mother was friends with Defendant's girlfriend, Felicia. Defendant lived with Felicia and Felicia's six-year-old daughter, A.J. N.K. and her mother often spent time at the residence Felicia and A.J. shared with Defendant.
N.K.'s father resided outside of the country. Defendant and Felicia were part of her support system and regularly attended her basketball games. N.K. had previously stayed with Defendant and Felicia, while her mother traveled to Las Vegas for a vacation. N.K. testified that until 24 February 2012, she and Defendant had a normal adult-child relationship. Nothing inappropriate had ever occurred between them.
On the evening of 24 February 2012, N.K. agreed to babysit for A.J., while Defendant and Felicia went to a comedy club. The plan included N.K. staying overnight at their residence. N.K.'s mother dropped her off at Defendant and Felicia's residence between 6:00 p.m. and 7:00 p.m. Defendant and Felicia left the residence between 8:00 p.m. and 9:00 p.m.
A. State's Evidence
N.K. and A.J. watched a movie together in the living room. Defendant and Felicia owned a puppy. N.K. testified the puppy was in their bedroom, and she could hear it striking and banging against the bedroom door. A.J. fell asleep during the movie. N.K. carried her to the guest room upstairs, where N.K. planned to sleep, and put her into the bed. N.K. laid in the bed with A.J. and watched television. She also talked on the phone and texted with her friend, Josh, until sometime between 11:00 p.m. and midnight. N.K. was wearing a tank top and pajama pants.
N.K. was awake when Defendant and Felicia returned home. She knew when they had arrived because she heard the door alarm sound, "door opened" and then "door closed." N.K. testified she heard someone come upstairs and enter the bedroom. The person first went to A.J.'s side of the bed, lifted the covers, and then put the covers back down. N.K. testified she did not open her eyes. The individual then came to her side of the bed. She was lying on her left side. The individual "started rubbing [her] butt." He then "put his hand around [her] breast ... [and] started rubbing [her] nipples."
N.K. heard the door alarm announce "door open, door closed" a second time, and the individual left the room. N.K. opened her eyes and saw Defendant as the individual who was leaving the room. N.K. heard Defendant and Felicia talking about the puppy defecating on the floor. At 12:38 a.m., N.K. called her mother and told her Defendant had touched her. N.K. got dressed and picked up a pair of scissors from a desk in the bedroom.
N.K. went downstairs and asked Defendant where Felicia was. He responded that Felicia was upstairs in the bedroom. N.K. went into Felicia's bedroom and told her that Defendant had touched her. N.K. testified that Felicia stated, "who, the dog?" N.K. responded that Defendant had touched her. Defendant came into the bedroom, asked what was going on, and denied touching N.K.
N.K. went downstairs to wait for her mother. When N.K.'s mother arrived, N.K. got into the car with the scissors still in her hand. N.K.'s mother testified N.K. was crying and shaking. She had never previously seen N.K. so upset.
N.K.'s mother spoke with Felicia, while N.K. waited in the car. Defendant approached N.K.'s mother, dropped to his knees, and swore that he did not touch N.K. N.K.'s mother called police from the car, and met with officers at a nearby gas station. A female police officer met and spoke with N.K. about the allegation. Defendant met with detectives the following afternoon and provided a recorded statement, which was published to the jury.
B. Defendant's Testimony
Defendant testified that he and Felicia had returned home immediately after the comedy show. Defendant went into the kitchen for a drink, while Felicia tended to household matters, such as checking the laundry. Defendant began looking for the puppy to take it outside. The door was cracked to the bedroom where N.K. and A.J. slept. Defendant testified the puppy was in the living room with the girls when he and Felicia had left for the evening.
Defendant testified he entered the bedroom and saw both girls in the bed. He looked under the bed for the puppy, called the puppy by name, and left the bedroom. He walked into Felicia as he was leaving the bedroom. Felicia stated she thought the puppy had defecated somewhere upstairs. Defendant denied touching either girl while he was in the bedroom.
Defendant went into the bedroom he shared with Felicia and saw matter on the floor, which he believed to be dog feces. He went downstairs to get a trash bag and returned to the bedroom to clean the mess, which he then identified as potpourri. Defendant also identified dog urine and feces on another area of the floor in the room. Defendant went back downstairs after cleaning up the mess. At some point, Felicia went outside to check the mail. Defendant also walked outside to put the bag containing dog feces into the trash can.
Defendant and Felicia walked back inside together and went upstairs to change clothes. Defendant wanted to watch a movie, but Felicia stated she was ready for bed. He went downstairs alone to watch the movie. A while later, N.K. came downstairs and asked where Felicia was. He told N.K. that Felicia was in the bedroom. About ten minutes later, Defendant heard yelling and crying from upstairs. Defendant heard Felicia talking about the puppy, and assumed the puppy had bitten N.K. N.K. then accused Defendant of touching her.
Defendant's other evidence included the testimony of a woman he had previously dated for several years. She had a seventeen-year-old cousin, who had frequently visited her home. She testified Defendant never exhibited any inappropriate behavior with her cousin. Neither the State nor Defendant called Felicia as a witness.
The jury convicted Defendant of taking indecent liberties with a minor. The trial court sentenced Defendant as a Prior Record Level I offender to a minimum of fourteen and maximum of twenty-six months imprisonment. This sentence was suspended, and Defendant was placed on supervised probation for thirty-six months. The trial court also ordered Defendant to register as a sex offender for a period of thirty years.
II. Jurisdiction
Defendant properly appeals from the superior court's judgment entered upon his conviction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2015).
III. Counsel's Consent to Supplemental Jury Instruction
In his sole argument on appeal, Defendant argues he received ineffective assistance of counsel when his attorney consented to the trial court's supplemental jury instruction.
A. Standard of Review
To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) defense counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. State v. Braswell , 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985) (citing Strickland v. Washington , 466 U.S. 668, 687, 80 L.Ed. 2d 674, 693 (1984) ). A defendant is prejudiced by counsel's deficient performance when there is "a reasonable probability that, but for counsel's errors, there would have been a different result." Id . at 563, 324 S.E.2d at 248.
It is well established that ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."
State v. Thompson , 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (quoting State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) ).
"[C]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." State v. Fletcher , 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), cert. denied , 537 U.S. 846, 154 L.Ed. 2d 73 (2002).
B. The Jury's Question and the Supplemental Instruction
In its jury charge, the court instructed the jury that reasonable doubt "is a doubt based on reason and common sense arising out [of] some or all of the evidence that's been presented or the lack or insufficiency of the evidence , as the case may be." (emphasis supplied). During deliberations, the jury submitted a note to the court, which stated, "Could the prosecution have called [Felicia] as a witness?"
The following dialogue occurred between the court and the attorneys in response to the jury's question:
The Court: I mean, I just simply could say I'm not permitted to give you an answer. I mean, I just don't know what to say.
Defense Counsel: [m]aybe something on the lines of, you know, you are to base your decision based on the evidence that was presented not potential evidence-not a potential witness. You know, that is-it's a terrible question.
Court: Well, I mean it's-you argued it so it must not be that terrible.
Defense Counsel: Well, I mean, it's a terrible question for you to have to answer.
Court: Right.
Defense Counsel: Yeah. No, actually I'm glad they're asking that question, but I mean-
Court: Yeah. I mean, I think simply cautioning not to speculate. You know, they're to base their decision on the evidence and not speculate-should not be based on speculation, something along those lines.
Defense Counsel: Yeah.
The court then provided the jury with a supplemental instruction, as follows:
The first question is could the prosecution have called Ms. Felicia as a witness. The response that I give you to that is that you're instructed to base your decision on the evidence that was presented and all reasonable inferences that arise there from [sic], and you should not speculate.
Felicia was present at the residence and awake when the crime allegedly occurred. It is also undisputed that Defendant was in the bedroom while N.K. and A.J. were in bed, but Felicia's exact location during this time and the amount of time Defendant was in the bedroom is disputed. According to N.K., Felicia was outside when the touching occurred and Defendant was in the bedroom for approximately three minutes.
On the other hand, Defendant testified Felicia was behind him as he walked upstairs and went into the bedroom. He testified Felicia climbed the stairs, while he went into the room, and looked for the puppy. When he came out of the room, Felicia had just reached the top of the stairs and he met her going out of the bedroom.
Defendant argues the State's decision not to call Felicia to testify was significant, as demonstrated by the conflicting evidence and the jury's question. The jury's note to the court indicates the jury noticed discrepancies that may have been resolved by Felicia's testimony, and they questioned why she was not presented as a witness by the State.
While "a reasonable doubt may grow out of the evidence in the case[,] [i]t is also true that it may arise from a lack of evidence, or from its deficiency." State v. Tyndall , 230 N.C. 174, 176, 52 S.E.2d 272, 273 (1949). Defendant argues "[t]he instruction to which defense counsel agreed gave an erroneous impression that the jury should not consider the very omission that defense counsel wanted it to consider when assessing reasonable doubt." Defendant further argues the supplemental jury instruction negated the trial court's earlier instruction, stating the jury should consider the lack or insufficiency of the evidence when determining whether reasonable doubt exists. Defendant asserts trial counsel's consent to the supplemental instruction constituted ineffective assistance.
C. Deficient Performance
Under the two prong test to prove ineffective assistance of counsel, Defendant must first show his trial counsel's performance was deficient, which requires a showing "that counsel's representation fell below an objective standard of reasonableness." State v. Allen , 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), cert. denied , 549 U.S. 867, 166 L.Ed. 2d 116 (2006).
The closing arguments were not recorded for transcription, and are not part of the record before us. We presume from the later discussion between defense counsel and the trial court regarding the jury's question, defense counsel's strategy included an effort to create reasonable doubt in the minds of the jurors by highlighting Felicia's testimony being absent from the evidence. Counsel's consent to the supplemental instruction was not necessarily inconsistent with this strategy.
Defendant concedes the trial court properly instructed the jury on the reasonable doubt standard, and informed the jurors they could find reasonable doubt from the "lack or insufficiency of the evidence." The instructions would not have led the jury "to believe that a reasonable doubt must arise only from the evidence presented, and that a reasonable doubt could not arise from a lack of or insufficiency of the evidence." See State v. Hammonds , 241 N.C. 226, 231, 85 S.E.2d 133, 137-38 (1954) (" 'True it is, a reasonable doubt may grow out of the evidence in the case. It is also true that it may arise from a lack of evidence, or from its deficiency.' " (quoting Tyndall , 230 N.C. at 176, 52 S.E.2d at 273 ).)
The trial court did not instruct the jury not to consider the lack or insufficiency of the evidence in determining whether the State had met its burden of proof in the supplemental instruction. The instruction directed the jury to determine Defendant's guilt or innocence and return a verdict based on the evidence presented in the case, and not "to speculate." The jury was still able to consider the sufficiency, or lack thereof, of the State's evidence, and determine whether the absence of Felicia's testimony raised a reasonable doubt that Defendant committed the offense. The trial court simply instructed the jury to "not speculate."
IV. Conclusion
Defendant has failed to carry his burden to show his trial counsel's performance was deficient. Fletcher , 354 N.C. at 482, 555 S.E.2d at 551 ; Allen , 360 N.C. at 316, 626 S.E.2d at 286. Defendant's claim for ineffective assistance is without merit and denied. Defendant received a fair trial, free from prejudicial errors he preserved and argued. It is so ordered .
NO ERROR.
Report per Rule 30(e).
Chief Judge MCGEE and Judge STROUD concur.