An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1003

Filed 3 September 2025

Haywood County, Nos. 21CRS000637-430, 21CRS052750-430, 21CRS052752-430

STATE OF NORTH CAROLINA

       v.

RICHARD MEAD BAUMGARDNER

Appeal by defendant from judgment entered 2 May 2024 by Judge Craig Croom in Haywood County Superior Court. Heard in the Court of Appeals 14 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Yvonne B. Walker, for the State.*
>
> *Sarah Holladay, for the defendant.*

ARROWOOD, Judge.

Richard Mead Baumgardner ("defendant") appeals from judgment entered 2 May 2024 upon his conviction of two counts of assaulting a law enforcement officer with a firearm, two counts of communicating threats, and one count of injury to real property. On appeal, defendant argues: (1) the trial court erred by failing to intervene *ex mero motu* to prevent improper closing arguments by the State; and, (2)

the trial court erred by entering a judgment which required defendant to receive substance abuse treatment, not part of the trial court's oral findings, and not justified by the evidence presented at trial. For the following reasons, we find no error in part and remand for correction of a clerical error.

## I. Background

Evidence at trial tended to show the following:

On 30 September 2021, Tina McCall ("Ms. McCall"), after leaving work and picking up groceries, returned to her home around 5:15 p.m. Upon arrival, she noticed two holes in the blinds on her bedroom window. As she got closer to the window, she noticed there was glass on the floor and realized the window had been shot through. Her husband had been at work all day. Ms. McCall called the sheriff's office and spoke with Jeff Haynes ("Mr. Haynes") who advised her to move to a safe location. After the call, Ms. McCall hid out behind a shed on her property and waited until her husband and the first deputy officer arrived. When Deputy Wesley Barton ("Deputy Barton") arrived, she told him she believed defendant was the person who had caused the damage to her home. Later that evening, Ms. McCall was cleaning her home and found several shell casings in her bathroom and bedroom.

Ms. McCall's home is located adjacent to the home where defendant lived with his mother. Ms. McCall testified to an escalation in "the screaming and ranting and music and raving" coming from defendant's home during the few weeks preceding the events on 30 September 2021. She also stated defendant often practiced shooting his

gun outside the home, especially after "he was having an argument with someone[.]"

Fred Patton ("Mr. Patton") was a neighbor of Ms. McCall and defendant. Mr. Patton was having dinner on 30 September 2021 in his home when he heard rapid gunfire. He later testified that the shots sounded like they came "from the other side of the McCall residence." Sometime after the gunshots stopped, he received a call from Ms. McCall, who stated she believed someone had shot at her bedroom window.

Cody Hyatt ("Mr. Hyatt") is Ms. McCall's son-in-law and on the day of the incident, lived next door to Ms. McCall. Defendant's home was visible from his home. Around 3:00 p.m. on 30 September 2021, Mr. Hyatt heard defendant screaming loudly from his home. Mr. Hyatt ran outside his home and saw defendant shooting his gun and screaming before suddenly ceasing. Later that evening, Mr. Hyatt received a call from Ms. McCall, who told him she thought her house had been shot at.

Deputy Barton was working patrol on 30 September 2021 when he received a call from dispatch directing him to Ms. McCall's home. Ms. McCall told Deputy Barton she believed defendant was the person who shot the bullet through her home because he had been shooting a firearm in the area earlier that day. After this conversation, Deputy Barton called in Deputy Eric Batchelor as back up to the scene.

When Deputy Barton and Deputy Batchelor arrived at defendant's home, they heard loud music coming from inside the home and saw several brass casings on the front patio of the home. They determined that they were fresh shell casings because

they did not appear to be weathered or corroded. Because Deputy Barton determined the person inside likely had a firearm, he decided to approach the home more cautiously as he walked up to the door. Deputy Barton then knocked on the door and announced himself as an officer from the Haywood County Sheriff's Office. After Deputy Barton knocked at least three separate times, defendant finally answered the door. Although defendant never stepped outside the home, he proceeded to point a firearm at Deputy Barton through the door and say, "Do we have a problem, mother[f***er]?" Deputy Barton alerted Deputy Batchelor that defendant had a gun and Deputy Barton then raised his own pistol while trying to get defendant to drop his weapon.

Deputy Barton and Deputy Batchelor took up post behind their patrol cars. Deputy Barton commanded defendant to put his gun down several times; however, defendant did not immediately do so and instead went back into his home. Defendant proceeded to come back out from his house, tell both deputies that they were the devil and were there to take defendant to hell, and again went back inside his home. However, defendant did not fire his gun at the deputies. Deputy Barton and Deputy Batchelor tried to talk defendant down multiple times. This interaction lasted about 30 minutes. Defendant eventually told both deputies he would only speak with Sheriff Greg Christopher.

Sheriff Christopher eventually arrived on the scene and was able to de-escalate the situation. Defendant placed his gun back inside his home before coming out and

sitting on a lawn chair on his patio. Sheriff Christopher sat with defendant, who told him he was upset with the government for taking his daughters. The conversation was short and only lasted about a minute. After the conversation, Sheriff Christopher spoke with Deputy Batchelor, who recommended defendant be involuntarily committed.

Deputy Andrew Sutton also responded to and witnessed the scene where defendant was threatening Deputy Barton and Deputy Batchelor. Deputy Sutton was called back to the location later on the evening of 30 September 2021 because Mr. McCall, Ms. McCall's husband, had found bullet fragments in the upstairs bathroom of their home. These fragments were not sent off for testing because the charges against defendant were misdemeanors.

Defendant was eventually placed in handcuffs and taken into custody. While defendant was in handcuffs, he told the deputies that he was going to kill them, their families, and their children. After defendant was placed in the police car, Deputy Batchelor searched the home and secured a handgun placed right by the front door of the home. Other officers who responded to the scene also discovered a gun safe, more ammunition, and pill bottles with defendant's name on them for medication. Eventually, defendant was transported to the Veteran Affairs Hospital Center in Asheville to be involuntarily committed. Defendant remained at the VA center for three weeks before he was released to go back to his home. Before he was able to return home, he was arrested by the Haywood County Sheriff's Department and

taken to the county jail.

On 29 November 2021, defendant was indicted on two counts of assault with a firearm on a law enforcement officer, two counts of communicating threats, and one count of injury to real property. Defendant gave pretrial notice of his intention to offer the defense of insanity, diminished capacity, and mental infirmity during trial. A trial on these charges commenced on 29 April 2024. After the State presented its evidence, defendant's counsel moved to dismiss all the charges. The trial court denied defendant's motion.

Defendant testified on his own behalf. Defendant stated that he was outside his home shooting his gun on 30 September 2021, however, he was shooting his gun away from the McCall's home. He also stated there were no homes in his line of fire that day. After he finished shooting his gun, he took Alprazolam, a medication that helps him sleep, and took a nap. Defendant then woke up when he heard shouting outside his door. He stated he felt threatened because he did not recognize the voice. Defendant stated he grabbed his gun and when he opened the door to his home, he saw a gun pointed at his chest. After he recognized the person as a police officer, he told them he was unarmed and wanted to see Sheriff Christopher because they went to church together. Although defendant gave pretrial notice that he would offer the defenses of insanity, diminished capacity, and mental infirmity, much of his testimony addressed testimony presented by several officers earlier during trial.

Defendant also testified that during these events, he started having an anxiety

attack and did not understand what was happening. He stated he immediately holstered his gun when he recognized the people outside his home as law enforcement. Defendant testified that because he was having an anxiety attack, he soiled himself and "verbally might have said some stuff" to the officers. Defendant repeatedly testified he would never communicate threats to law enforcement and he did not recall saying that he would kill them and their families.

At the conclusion of evidence, defendant's counsel renewed his motion to dismiss. The trial court again denied the motion.

During closing arguments, the State argued that "[defendant] may need help but if he is not held accountable for these actions, he will go right back home, have access to his gun and maybe more guns. The only way that he will get help is if it is ordered through sentencing." Defendant's counsel did not object to this statement.

After closing arguments and deliberations, the jury found defendant guilty of all five counts as charged against him. The trial court sentenced defendant to an active term of 48 to 70 months imprisonment. Defendant entered oral notice of appeal on 2 May 2024.

## II.    Discussion

On appeal, defendant argues the trial court erred in: (1) failing to intervene *ex mero motu* during closing arguments to prevent the State from making improper arguments to the jury; and, (2) entering a judgment that requires defendant to receive substance abuse treatment when such a requirement was not part of the trial court's

oral findings. The State concedes in its brief that entering judgment to require defendant to complete substance abuse treatment was a clerical error. We address each argument in turn.

### A. Improper Closing Arguments

Defendant argues the trial court erred in failing to intervene *ex mero motu* during the State's closing arguments. Defendant specifically argues the State telling the jury that defendant will go home and have access to his guns if they do not find him guilty was a blatant appeal to the passions of the jury and these statements were prejudicial towards defendant. These statements may have been improper, but we disagree they were prejudicial.

Attorneys are granted wide latitude for jury arguments. *See State v. Allen*, 360 N.C. 297, 306 (2006). "The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133 (2002) (cleaned up).

> In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*Id.* For the remarks to constitute reversible error, the prosecutor's remarks must be both improper and prejudicial. *Id.*

Here, defendant contests the following statement made by the State during its closing argument: "[defendant] may need help but if he is not held accountable for these actions, he will go right back home, have access to his gun and maybe more guns. The only way that he will get help is if it is ordered through sentencing." These statements are neither grossly improper nor prejudicial towards defendant.

When an "offending comment [is] not only brief, but its overall significance to the entire closing argument [is] minimal; and the comment [is] made in the context of a proper 'voice and conscience of the community[,]'" such statement is not considered grossly improper. *State v. Fletcher*, 354 N.C. 455, 484–85 (2001). Here, defendant quotes two lines out of a twenty-two page closing argument presented by the State that reasonably infers that defendant will have access to guns should he return home. Furthermore, this statement made by the State properly reflects a concern that defendant could be a danger to his community should the jury find him not guilty.

Even assuming, *arguendo,* the State's arguments were improper, these statements are not shown to have prejudiced defendant. The totality of the evidence presented at trial supports the conclusion that defendant was the person who assaulted Deputy Barton and Deputy Batchelor and who had caused property damage to Ms. McCall's home. First, several officers, aside from Deputy Barton and

Deputy Batchelor, heard defendant telling the two deputies that he would kill them and their families. Furthermore, testimony from neighbors showed defendant was the only person in the area that day shooting a gun, and defendant admitted to firing his weapon earlier that day. Finally, defendant himself admitted it was possible he could have said some things to the deputies when he was being handcuffed. Thus, the evidence supports the conclusion that defendant caused property damage to Ms. McCall's home and assaulted and threatened both Deputy Barton and Deputy Batchelor. The trial court did not prejudicially err in failing to intervene during the State's closing arguments without objection from defendant.

Defendant alternatively asks this Court to order an evidentiary hearing to determine if defendant received ineffective assistance of counsel. We decline this request at this time. We dismiss this argument without prejudice for defendant to file a motion for appropriate relief at the trial court should defendant wish to pursue an ineffective assistance of counsel claim. *State v. Stroud*, 147 N.C. App. 549, 556 (2001).

### B. Judgment for Substance Abuse Treatment.

Defendant further argues the trial court erred in entering judgment requiring defendant to undergo substance abuse treatment. The State, in its brief, conceded the trial court entering judgment directing defendant to submit to substance abuse treatment was a clerical error. "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court

for correction because of the importance that the record 'speak the truth.' " *State v. Smith*, 188 N.C. App. 842, 845 (2008) (citations omitted). Accordingly, the matter is remanded for entry of a new judgment not ordering defendant to submit to substance abuse treatment.

### III.    Conclusion

For the foregoing reasons, we find the defendant received a fair trial free from prejudicial error, dismiss without prejudice defendant's ineffective assistance of counsel claim, and remand for correction of a clerical error in the entry of judgment.

NO ERROR IN PART; DISMISSED IN PART; AND REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judges TYSON and CARPENTER concur.

Report per Rule 30(e).